457 A.2d 1287

**Grace BULLOCK and Clifford Bullock**

v.

**Marilyn PARISER and Mildred Zurbin and Pennsylvania Insurance Guaranty Association and U.S. Fidelity & Guaranty Co. and Fireman's Fund Insurance Company.**

**Appeal of PENNSYLVANIA INSURANCE GUARANTY ASSOCIATION.**

Superior Court of Pennsylvania.

Argued Jan. 5, 1981.

Filed March 11, 1983.

488

Joseph J. Hankins, Philadelphia, for appellant.

Eugene Spector, Philadelphia, for Bullock, appellees.

Lawrence R. Pierce, Philadelphia, for Pariser, appellee.

Michael A. Etkin, Philadelphia, for Zurbin, et al., appellees.

Angelo L. Scaricamazza, Jr., Philadelphia, for U.S., appellee.

Joel P. Fishbein, Philadelphia, for Fireman's, appellee.

Before PRICE,* WIEAND and HOFFMAN, JJ.

* This Decision was reached prior to the death of Judge PRICE.

PRICE, Judge:

On May 7, 1971, appellee, Grace Bullock, was bitten by a dog kept for security purposes on the premises at 646 South Sixteenth Street, Philadelphia, Pennsylvania. These premises were owned by appellees, Marilyn Pariser and Mildred Zurbin, who conducted a partnership at that address, known as "Kiddie Castle."

At the time of the accident, the partnership was open and conducting business, and had in effect a liability insurance policy, issued by Penn State Mutual Insurance Company ("Penn Mutual"). This policy covered the partnership for liability arising out of the operation of the business to the extent of $10,000 per injury.

The partnership gave prompt and proper notice of the incident to Penn Mutual. Suit was instituted by Mrs. Bullock and her husband, Clifford Bullock, in December of 1971, against Mrs. Pariser and Mrs. Zurbin. After suit was instituted, Penn Mutual became defunct and the defense of the partnership was undertaken by counsel on behalf of appellant, the Pennsylvania Insurance Guaranty Association ("PIGA").

When PIGA became involved in the suit, it investigated the possibility of the existence of other carriers which might have provided coverage for Mrs. Pariser's or Mrs. Zurbin's liability arising out of the dog-bite incident. Each woman apparently had a homeowner's policy at the time, covering her own residence, Mrs. Pariser with appellee, Fireman's Fund Insurance Company ("Fireman's Fund"), and Mrs. Zurbin with appellee, U.S. Fidelity and Guaranty Company ("USFG").

Fireman's Fund and USFG were unable to admit or deny the existence of these homeowner's policies, due to the passage of time between the incident in 1971 and their notification in 1977. However, both companies agreed that their policies, if in effect, would have contained an exclusion for

> bodily injury or property damage arising out of business pursuits of any insured except activities therein which are ordinarily incident to non-business activities.

Neither Mrs. Pariser nor Mrs. Zurbin had notified her homeowner's insurance carrier of the accident, as both believed that these policies would not cover claims arising out of the partnership business.

On June 30, 1977, a jury verdict was entered in favor of Mr. and Mrs. Bullock and against the partnership in the amount of $5,432.28. Subsequently, a praecipe for writ of execution in attachment was filed against PIGA, USFG, and Fireman's Fund. An arbitration was held on the garnishment action, and on November 28, 1978, an award was entered in favor of the Bullocks, and against PIGA only, in the amount of $3,851.52. An award was also entered in favor of Fireman's Fund and USFG.

Mr. and Mrs. Bullock appealed from the award of the arbitrators, and a non-jury trial was held in the Court of Common Pleas of Philadelphia County, before the late Honorable G. Fred DiBona. The case was tried on a stipulated statement of facts, and on May 9, 1979, Judge DiBona entered an opinion and an order directing entry of judgment for the Bullocks and against PIGA in the amount of $6,478.34. *Bullock v. Pariser*, 11 Pa.D & C 3d 77 (1979). PIGA filed exceptions to this order. Following the death of Judge DiBona, the case was reassigned to the Honorable Joseph P. Braig, and on April 23, 1980, Judge Braig entered an order confirming the written opinion of Judge DiBona in all respects, except that PIGA was permitted a $100 deductible as provided in § 201 of the Pennsylvania Insurance Guaranty Association Act, 40 P.S. § 1701.101 et seq.[1] This appeal was then taken by PIGA.

PIGA raises three issues on appeal. First, appellant contends that the trial court erred in finding that coverage for the dog bite incident was excluded under the "business pursuits" provisions of the homeowner's policies, and maintains that recovery from PIGA is barred by the Act because

1. 40 P.S. § 1701.201(b)(1).

of failure to exhaust coverage under these homeowner's policies. Secondly, appellant argues that PIGA has a statutory right to a setoff for payments made to Mrs. Bullock by her own disability carrier, and that the court below erred in finding that PIGA had waived any such right when it failed to raise this issue at the initial jury trial. Finally, appellant maintains that PIGA was incorrectly charged $150.00 in costs which, under the Philadelphia Rules of Civil Procedure, Mr. and Mrs. Bullock were obliged to pay for appeal of the arbitration award.

With the exception of the final allegation of error as to the arbitrators' fees, we disagree with appellant's contentions and affirm.

PIGA's first two arguments are based upon § 503(a) of the Act,[2] which provides:

Any person having a claim against an insurer under any provision in an insurance policy other than a policy of an insolvent insurer which is also a covered claim, shall first be required to exhaust his right under such a policy. Any amount payable on a covered claim under this act shall be reduced by the amount of any recovery under such insurance policy.

The trial court assumed that if their homeowner's policies covered Mrs. Bullock's accident, Mrs. Pariser and Mrs. Zurbin would have been required to first seek coverage under these policies. The court found, however, that

As the liability in this case arose from a strictly business related endeavor, neither the homeowner's policy issued by [Fireman's Fund], nor that written by [USFG] provided coverage for the incident involved in this case.

*Bullock v. Pariser*, 11 Pa.D & C 3d 77, 82–83 (1979). We agree.

Appellant maintains that the partnership's keeping of a security dog on its business premises falls within the exception stated in the "business pursuits" exclusion, as an activity ordinarily incident to non-business pursuits. While

2. 40 P.S. 1701.503(a).

this court has not previously been called upon to interpret such a "business pursuits" exclusion in a homeowner's insurance policy, identically worded exclusions in similar policies have been subject to considerable discussion in the courts of other states and by commentators.[3] Although the exception for activities ordinarily incident to non-business pursuits has resulted in rather close cases in some situations, the instant case is not a difficult one.

Appellant argues that

> The employment of a guard dog arises out of the occupation and possession of property, whether or not it is business property. The fact that the existence of the dog on the premises may assist in preserving business property is legally irrelevant because the business can operate profitably with or without a guard dog. Thus, the purchase and maintenance of a guard dog is not, itself, a business pursuit.

Appellant's Br. at 22. We find this argument to be entirely unconvincing. The fact that a business might continue to make a profit in the absence of any number of activities conducted in furtherance of its interests does not prevent such activities from being "business pursuits." For example, a retail store may make a profit while employing only one salesperson, yet the hiring of a second salesperson is clearly a "business pursuit."

The facts of this case are quite similar to those of several cases decided in other jurisdictions involving the application of the "business pursuits" exclusion to various gunshot injuries occurring during business activities. These cases have resulted in a finding of no coverage where the ostensible purpose for the gun's presence at the business establishment was security. *See Neal v. Celina Mut. Ins. Co.*, Ky.App., 522 S.W.2d 179 (1975); *Safeco Insurance Co. v.*

---

**3.** *See generally* 48 A.L.R.3d 1096; Frazier, *The "Business Pursuits" Exclusion in Personal Liability Policies: What the Courts Have Done With It,* 572 Ins.L.J. 519 (1970); Frazier, *The Business Pursuits Exclusion Revisited,* 649 Ins.L.J. 88 (1977).

*Leslie,* 276 Or. 221, 554 P.2d 469 (1976); *Kermans v. Pendleton,* 62 Mich.App. 576, 233 N.W.2d 658 (1975).[4]

We are mindful that, as appellant notes, ambiguities in such insurance policies are to be resolved in favor of coverage. *Frisch v. State Farm Fire and Casualty Co.,* 218 Pa.Superior Ct. 211, 275 A.2d 849 (1975). As to coverage for this incident, however, no ambiguity exists. The dog which attacked Mrs. Bullock was owned by the partnership and kept in the store for security purposes. Furthermore, the dog lived on the business premises at all times. Appellants advance no possible purpose for the presence of this dog other than the protection of the business property of the partnership. Therefore, the court below was clearly correct in holding that the "business pursuits" exclusion of the homeowner's policies precluded coverage for Mrs. Bullock's injuries.

■ In its second argument, PIGA contends that under § 503(a) of the Act, it is entitled to a setoff for the sum paid to Mrs. Bullock by her own disability insurer. The trial court held that if PIGA desired such a deduction it should have asserted this right at the jury trial so that a special verdict could have been returned by the jury. No motion was filed to mold the verdict, and, thus, it could not be determined what portion of the award, if any, was based on Mrs. Bullock's disability. Therefore, the court found that PIGA had waived any right to setoff. Even if PIGA had not waived this issue, it would not be entitled to deduct the amount of this payment from the sum due to the Bullocks.

In *Sands v. Pennsylvania Insurance Guaranty Association,* 283 Pa.Superior Ct. 217, 423 A.2d 1224 (1980), this

---

**4.** Gunshot cases resulting in a finding of no-coverage name involved divergent fact patterns unrelated to the instant case. *See, e.g. Jackson v. Lajaunie,* La.App., 253 So.2d 540 (1971), affd. in part and revd. in part *Jackson v. Lajaunie,* La., 270 So.2d 859 (1972) (employee playing "practical joke" with gun, practical joke held not a "business pursuit"); *Milwaukee Mutual Insurance Co. v. City of Minneapolis,* 307 Minn. 301, 239 N.W.2d 472 (1976) (no coverage where policeman not yet on duty was showing service revolver to fellow officer when gun discharged; court implied result would have been different if officers were on duty at time of accident.)

court addressed the question of when PIGA may be entitled to a setoff under § 503(a) of the Act. In that case, we noted that under the language of this section, an individual is not required to exhaust a claim unless it is "also a covered claim." Referring to the definitional portion of the statute, we found that a "covered claim"

> ... means an unpaid claim, including a claim for unearned premiums, *which arises under a property and casualty insurance policy of an insolvent insurer* ...

40 P.S. § 1701.103(5)(a). (emphasis added). *Sands, supra,* 283 Pa.Superior at 224, 423 A.2d at 1227.

We determined that the second sentence of § 503(a), providing for the reduction of any amount payable under the Act "by the amount of any recovery under such insurance policy," refers back to any recovery on a claim of the sort referred to in the first sentence of § 503(a), i.e. any "covered claim." *Sands, supra,* 283 Pa.Superior at 225, 423 A.2d 1227–28. Mrs. Bullock's recovery from her disability insurer was not a "covered claim", because it did not result from the insolvency of any insurer. Therefore, § 503(a) does not apply.

This result is consonant with the purpose of the Act, which is, in relevant part, "... to avoid financial loss to claimants or policy holders as a result of the insolvency of an insurer." 40 P.S. § 1701.102. The non-duplication of recovery provision of § 503 of the Act functions to prevent windfall judgments, such as might occur where, for example a tortfeasor's insurance company becomes insolvent, and a claimant seeks recovery on his own uninsured motorist coverage, as well as from PIGA as successor to the insolvent insurer. In such a situation, absent the provisions of § 503, a claimant might obtain a much greater recovery than he would have received had the tortfeasor's insurance company remained solvent. Such a double recovery would exceed the loss-prevention purposes of the Act. This is not the case here. Mrs. Bullock is in no better position than she would have been if Penn Mutual had remained solvent, and PIGA is not entitled to setoff.

Finally, Mr. and Mrs. Bullock concede that the judgment entered in their favor should be reduced by $150.00, which sum was incorrectly charged as a cost to PIGA for arbitrators' fees in the garnishment proceeding. The inclusion of the $150.00 fee contravenes Phila.R.C.P. 180, Rule VII(A)(3), which states that such fees are not taxable as costs, and cannot be recovered by the appellants of an arbitration award (here, the Bullocks) in any proceeding.

The judgment for Mr. and Mrs. Bullock shall be reduced by the sum of $150.00 for arbitrators' fees incorrectly taxed to appellant. The order is otherwise affirmed, and jurisdiction is not retained.