Michael BESACK

v.

ROUSELLE CORP., et al.

Civ. A. No. 86–0572.

United States District Court,
E.D. Pennsylvania.

Feb. 15, 1989.

Lawrence R. Diamond, L. Bruce Hoffman, Philadelphia, Pa., for plaintiff.

Kathleen D. Wilkinson, Philadelphia, Pa., for Presses, Inc.

A. Peter Prinsen, Duane, Morris & Heckscher, Philadelphia, Pa., for Pennsylvania Ins. Guar. Ass'n.

## MEMORANDUM

O'NEILL, District Judge.

Plaintiff Michael Besack, a Pennsylvania citizen, filed this action alleging that he was injured while operating a punch press in the course and scope of his employment with Pennsbury Manufacturing Company.[1] Besack sought damages for medical expenses, wage loss, and pain, suffering and humiliation from the manufacturer of the punch press, Rouselle Corporation, a citizen of Illinois. At the time of the accident, Pennsbury received workmen's compensation insurance coverage from Harleysville Mutual Insurance Company; and Rouselle was insured under a comprehensive general liability policy issued by Ideal Mutual Insurance Company, with limits in excess of $300,000. Because Ideal was declared insolvent in February, 1985, Rouselle filed a claim for defense and indemnification with the Illinois Guaranty Fund, with which Ideal had a policy, and Besack sought recovery against the Pennsylvania Insurance Guaranty Association ("PIGA") under the Pennsylvania Insurance Guaranty Association Act, 40 P.S. § 1701.101 *et seq.*

To date, Harleysville has paid a total of $68,374.93 in workmen's compensation benefits to Besack. The parties have agreed to settle all claims against Rouselle Corpo-

---

1. This summary of the relevant facts is drawn from the stipulation entered into by the parties on December 20, 1988, and approved by this Court on December 21, 1988.

ration and Presses, Inc.[2] for $300,000. According to the stipulation entered by the parties, "[t]he sum of $300,000.00 represents the full, fair and reasonable value of all claims against Rouselle Corporation and Presses, Inc. arising out of the occurrence of June 8, 1984 and includes the $68,374.93 paid to the plaintiff by Harleysville Mutual Insurance Company." Stipulation, at 4. Of this $300,000, Illinois Guaranty has contributed its statutory limit of $150,000, and PIGA has paid $81,525.07, representing the $300,000 less payments by Illinois Guaranty and Harleysville, as well as a $100 deductible.

The only issue remaining in the case concerns PIGA's payment. Besack asserts that PIGA cannot offset Harleysville's payment against the amount PIGA must pay Besack, and that PIGA therefore owes Besack an additional $68,374.93. PIGA contends that Besack's recovery from Harleysville is not a "covered claim" under the PIGA Act, so that PIGA already has paid its obligations in full. Although the Pennsylvania Supreme Court has not yet addressed this issue, I predict that it would find that Besack is not entitled to any further recovery from PIGA.

PIGA undertakes the obligations of insolvent insurers only to the extent that the obligations are "covered claims" under the PIGA Act. 40 P.S. § 1701.102. "Covered claims" are defined in 40 P.S. § 1701.103(5):

(a) "Covered claim" means an unpaid claim, including a claim for unearned premiums, which arises under a property and casualty insurance policy of an insolvent insurer and is:

(i) The claim of a person who at the time of the insured event resulting in loss or liability was a resident of this Commonwealth, or

(ii) A claim arising from an insured event resulting in loss or liability to property which was permanently situated in this Commonwealth.

(b) A covered claim shall not include any amount due any insurer, reinsurer, insurance pool, or underwriting association, as a subrogation recovery or otherwise.

(c) A covered claim shall not include any amount in excess of the applicable limits of the policy under which it arises.

Besack's claim for an additional $68,374.93 from PIGA does not fit the definition of a "covered claim" in two respects: it is not an unpaid claim arising from the insurance policy of an insolvent insurer, since it represents the amount already paid by the solvent Harleysville Mutual Insurance Company; and if paid to Besack by PIGA, it would represent an amount due Harleysville as a subrogation recovery.

As noted above, the parties have stipulated that the $300,000 settlement encompasses all claims against Rouselle, the only party whose insurer is insolvent, so that Besack's "covered claim" under the PIGA Act can be no greater than $300,000. The parties also have stipulated that the $300,000 includes Harleysville's payment to Besack. That part of the $300,000 representing Harleysville's payment ($68,374.93) cannot be a covered claim because Harleysville actually paid the money, and Harleysville is not insolvent. As a result, PIGA's liability is for the part of the settlement figure not already paid by Harleysville or by Illinois Guaranty[3], i.e. the amount which PIGA already has paid to Besack.

The parties also have stipulated that "[p]laintiff's claims for medical expense and wage loss in this lawsuit represent a subrogation claim to the extent of $68,374.93 in medical expense payments and wage loss payments (disability compensation) paid by Harleysville Mutual Insurance Company." Stipulation, at 4. If the parties had not settled, then, Harleysville would be entitled to recover the $68,374.93

2. The stipulation states that Besack instituted his suit against Presses, Inc., alleging that Presses was Rouselle's successor, but that "Presses, Inc. is not the successor corporation to Rouselle Corporation. Rouselle Corporation was substituted for Presses, Inc. in this action and is the correct party defendant." Stipulation, at 2.

3. The amount plaintiff recovered from Illinois Guaranty is set off against PIGA's liability under 40 P.S. § 1701.503(b).

from Rouselle, and therefore from PIGA. Such a subrogation claim is not a covered claim under § 1701.103(5)(b).

Harleysville's election to waive its claim for subrogation[4] does not change the legal nature of the claim. Besack cannot now assert, in effect, Harleysville's subrogation claim and avoid the application of § 1701.103(5)(b). If he were able to do so, Besack would be able to recover more money than he could have if Ideal had remained solvent.[5] As the Pennsylvania Superior Court has noted, "[s]uch a double recovery would exceed the loss-prevention purposes of the Act." *Bullock v. Pariser*, 457 A.2d 1287, 1291, 311 Pa.Super. 487 (1983). *See also Sands v. Pa. Insurance Guaranty Association*, 423 A.2d 1224, 1228–1229, 283 Pa.Super. 217 (1980), and cases cited therein; *Lucas v. Illinois Insurance Guaranty Fund*, 367 N.E.2d 469, 471, 52 Ill.App.3d 237, 10 Ill.Dec. 81 (1st Div.1977) (interpreting Illinois equivalent of PIGA Act and holding that "[t]o permit a greater recovery than would have occurred had the insurance company remained solvent would both extend the Act beyond its purpose and offend public policy by giving the Act an interpretation which results in a windfall judgment.")

Besack argues that *Bullock* supports his claim for additional recovery from PIGA. But *Bullock* concerns the proper interpretation of § 1701.503(a), the PIGA Act's non-duplication of recovery provision. The present case turns, however, on the preliminary question of what constitutes a covered claim under § 1701.103(5). Moreover, *Bullock*'s holding that a plaintiff's recovery from her disability insurer need not be set off against her recovery from PIGA was based on the court's finding that there was no possibility of a double recovery in that case: "Mrs. Bullock is in no better position than she would have been if Penn Mutual had remained solvent, and PIGA is not entitled to setoff." *Bullock*, 457 A.2d

at 1291. But as discussed above, any further recovery from PIGA would give Besack more money than he would have received if Ideal had remained solvent; the parties' stipulation concerning the $300,000 settlement figure permits no contrary interpretation.

Besack's request for an order compelling PIGA to pay an additional $68,374.93 will be denied.

---

4. The parties have stipulated that "Harleysville Mutual Insurance Company has now waived and abandoned any rights it may have had to recover the amount of $68,374.93 representing its subrogation interest, against any party to this action." Stipulation, at 4.

5. As the parties stipulated, the $300,000 settlement includes all claims against Rouselle, and represents the full amount Besack would have received if Ideal had remained solvent. If, however, Besack prevails on his claim here, he would collect a total of $368,374.93.