[No. 23231–2–I.   Division One.   January 8, 1990.]

WASHINGTON INSURANCE GUARANTY ASSOCIATION, *Respondent,* v. MCKINSTRY COMPANY, *Appellant.*

*Stephen Black* and *Jensen & Black,* for appellant.

*Sylvia Luppert, Palmer Robinson,* and *Carney Stephenson Badley Smith Mueller & Spellman,* for respondent.

PEKELIS, J.—McKinstry Company (McKinstry) appeals from the trial court's ruling that the Washington Insurance Guaranty Association (WIGA) is entitled to reduce the amount payable on a claim arising from the insolvency of an excess insurer by the policy limits of the underlying primary coverage.

## I

The facts are undisputed. In October 1984, Cossie Burruss sued McKinstry for personal injuries allegedly sustained as a result of McKinstry's negligence. McKinstry carried primary insurance coverage with CNA Insurance

Company (CNA). The policy issued by CNA had a liability limit of $500,000 for bodily injuries. McKinstry also carried excess coverage under a bumbershoot policy issued by Mission National Insurance Company (Mission).

After commencement of the lawsuit against McKinstry, Mission became insolvent and was ordered liquidated. McKinstry then filed a claim against WIGA on behalf of Cossie Burruss.

The parties agreed that the reasonable settlement value of Burruss' claim exceeded $1 million. CNA tendered its insurance policy limits of $500,000 to McKinstry, and these funds were paid to Burruss. WIGA disputed its statutory liability for any part of the Burruss claim in excess of $500,000, the amount of the primary coverage with CNA. In order to effect a settlement of the Burruss claim, WIGA and McKinstry entered into an agreement which provided for settlement of the claim while reserving the issue of WIGA's liability.

WIGA then filed a lawsuit against McKinstry seeking a declaratory judgment that it was not liable for any part of the Burruss claim in excess of the policy limits of McKinstry's primary insurance. WIGA moved for summary judgment, arguing that under RCW 48.32.100(1) the amount payable by it as a result of the excess insurer's insolvency should be reduced by the amount of any recovery under the primary insurer's policy. The trial court granted WIGA's motion, ruling as a matter of law that "the amount payable on a covered claim which arises because of the insolvency of an excess insurer under RCW 48.32.010 *et seq.* shall be reduced by the limits of any underlying or primary liability policies insuring the insured of the insolvent excess insurer." McKinstry appeals this ruling.

## II

The issue presented by this appeal is whether WIGA is entitled to offset payments by a primary insurer when standing in the shoes of an insolvent excess insurer. Resolution of this issue, one of first impression in Washington,

turns on construction of RCW 48.32.100(1), which provides as follows:

(1) Any person having a claim against his insurer under any provision in his insurance policy which is also a covered claim shall be required to exhaust first his right under such policy. Any amount payable on a covered claim under this chapter shall be reduced by the amount of such recovery under the claimant's insurance policy.

RCW 48.32.100(1).

█ In interpreting a statute, it is the court's function to discover and give effect to the intent of the Legislature. *Stewart Carpet Serv., Inc. v. Contractors Bonding & Ins. Co.,* 105 Wn.2d 353, 358, 715 P.2d 115 (1986). The intent of the Legislature must be derived from the language of the act as a whole. *Stewart Carpet,* 105 Wn.2d at 358; *Condit v. Lewis Refrigeration Co.,* 101 Wn.2d 106, 110, 676 P.2d 466 (1984). If a statute is amenable to more than one interpretation, we adopt the interpretation most consistent with the Legislature's intent. *Stewart Carpet,* 105 Wn.2d at 358.

The stated purpose of the Washington Insurance Guaranty Association Act (Act), the act at issue in this case, is to avoid financial loss because of the insolvency of an insurer:

The purpose of this chapter is to provide a mechanism for the payment of covered claims under certain insurance policies to avoid excessive delay in payment and to avoid financial loss to claimants or policyholders because of the insolvency of an insurer, to assist in the detection and prevention of insurer insolvencies, and to provide an association to assess the cost of such protection among insurers.

RCW 48.32.010. The Act directs that its provisions "shall be liberally construed to effect the purpose under RCW 48.32.010 which shall constitute an aid and guide to interpretation." RCW 48.32.910.

█ To accomplish the purpose of avoiding financial loss, the Act provides that WIGA shall

[b]e deemed the insurer to the extent of its obligation on the covered claims and to such extent shall have all rights, duties, and obligations of the insolvent insurer as if the insurer had not become insolvent.

RCW 48.32.060(1)(b). The Act thus contemplates that WIGA will step into the shoes of the insolvent insurer. The Act makes no distinction between primary and excess insurers; WIGA's obligations are the same regardless of the type of insurance coverage involved.

Relying on the statutory purpose expressed in these provisions, McKinstry argues that RCW 48.32.100(1) should be construed to prevent only duplicate recovery. WIGA, however, contends that the Act was not intended to eliminate *any* financial loss, but simply to mitigate such loss. Thus, WIGA argues, RCW 48.32.100(1) should thus be construed to bar recovery whenever another source of recovery is available which is equal to WIGA's maximum dollar obligation of $299,900.[1]

In support of its position, WIGA contends that the first sentence of RCW 48.32.100(1) requires a claimant to exhaust *all* other sources of recovery before seeking payment from WIGA. Thus, WIGA construes the second sentence, which provides that any amount payable on a covered claim "shall be reduced by the amount of such recovery", as reducing its obligation by the amount of any other recovery. RCW 48.32.100(1).

■ However, WIGA's interpretation of the first sentence of the statute as requiring a claimant to exhaust all other sources of recovery is overly broad. A claimant must exhaust only a claim "which is also a covered claim". RCW 48.32.100(1). The Act defines a "covered claim" as follows:

> (4) "Covered claim" means an unpaid claim . . . which arises out of and is within the coverage of an insurance policy to which this chapter applies issued by an insurer, if such insurer becomes an insolvent insurer after the first day of April, 1971 . . . ..

RCW 48.32.030(4). Accordingly, the phrase "such recovery" in the second sentence of RCW 48.32.100(1) refers back to

---

[1]WIGA's obligation includes "only that amount of each covered claim which is in excess of one hundred dollars and is less than three hundred thousand dollars. . . ." RCW 48.32.060(1)(a).

recovery on a claim which arises out of a policy issued by an insolvent insurer. Thus, the statute provides for a reduction of WIGA's statutory obligation *only* where a claimant has another source of recovery for the claim *against the insolvent insurer,* not where a claimant has *any* other source of recovery.

Furthermore, *Prutzman v. Armstrong,* 90 Wn.2d 118, 579 P.2d 359 (1978) does not, as WIGA claims, support its position that RCW 48.32.100(1) allows it to offset payments actually made by a solvent primary insurer. WIGA relies on the *Prutzman* court's statement that the "exhaustion provision is apparently designed to limit WIGA liability to situations in which no other source of recovery for damages exists." *Prutzman,* 90 Wn.2d at 122.

This statement must be read in light of the facts presented in *Prutzman.* There, the insurer of a defendant in a tort action had become insolvent. A stipulated judgment was entered against the defendant. The plaintiff then settled with her own insurer for less than the policy limits of her uninsured motorist coverage and sought to recover the difference from WIGA. Because the plaintiff had settled with her insurer for less than the face amount of her policy, the court held that she had failed to meet the exhaustion requirement of RCW 48.32.100(1) and was not entitled to seek recovery from WIGA. *Prutzman,* 90 Wn.2d at 122.

We do not find *Prutzman* to be helpful in deciding the issue before us. The question of whether the plaintiff's claim against her own insurer was "also a covered claim" for purposes of the exhaustion requirement of RCW 48.32-.100(1) was not before the *Prutzman* court. The facts presented there required the court to focus exclusively on the question of whether claimants must always exhaust their own coverage before seeking recovery from WIGA. More importantly, the *Prutzman* court did not need to face the issue of whether, had the plaintiff exhausted her own coverage, WIGA would be entitled to offset that amount

against its statutory obligation.[2] The question of whether a claimant's *own* policy has to be exhausted before WIGA becomes liable is a different question than the one presented here: whether payment by the primary insurer can be used to offset WIGA's obligation for the insolvent excess carrier.

Moreover, to refuse to distinguish between primary and excess insurance runs counter to the vast majority of cases which have directly addressed this issue. In *Washington Ins. Guar. Ass'n v. Guaranty Nat'l Ins. Co.,* 685 F. Supp. 1160, 1161 (W.D. Wash. 1988), for example, WIGA argued that an excess insurer must "drop down" to provide primary coverage before WIGA could be required to step into the shoes of the insolvent primary insurer. The crux of WIGA's argument was that it was not liable until all other coverage, whatever the source, was exhausted. *Guaranty Nat'l,* 685 F. Supp. at 1161. The court rejected this argument, ruling that RCW 48.32.060(1)(b) required WIGA to act as the primary insolvent insurer would have acted. *Guaranty Nat'l,* 685 F. Supp. at 1163; *see also Washington Ins. Guar. Ass'n v. Keeter,* 847 F.2d 761, 764 (11th Cir. 1988).

The Pennsylvania Supreme Court in *Bullock v. Pariser,* 311 Pa. Super. 487, 457 A.2d 1287 (1983) construed an exhaustion provision similar to RCW 48.32.100(1).[3] In that case, the Pennsylvania Insurance Guaranty Association (PIGA) stepped in to defend the defendant in a tort action

---

[2]Since the plaintiff had only a $15,000 claim, the amount of her judgment against the defendant, there would have been no claim remaining had she exhausted her own coverage.

[3]The exhaustion provision in Pennsylvania's Insurance Guaranty Association Act provides as follows:

"Any person having a claim against an insurer under any provision in an insurance policy other than a policy of an insolvent insurer which is also a covered claim, shall first be required to exhaust his right under such policy. Any amount payable on a covered claim under this act shall be reduced by the amount of any recovery under such insurance policy." Pa. Stat. Ann. tit. 40, § 1701.503(a) (Purdon 1971).

when the defendant's own insurer became insolvent. PIGA then contended that it was entitled to offset the sum paid to the plaintiff by her own disability insurer.

The Pennsylvania court held that the exhaustion provision did not require a claimant to exhaust a claim unless it was also a covered claim, and that the reduction provision in the second sentence referred to recovery on a covered claim. *Bullock,* 457 A.2d at 1290. As in Washington, a covered claim was one which arose under a policy issued by an insolvent insurer. *Bullock,* 457 A.2d at 1290; Pa Stat. Ann. tit. 40, § 1701.103(5)(a) (Purdon 1971). The court reasoned that plaintiff's recovery from her disability insurer was not a covered claim because it did not arise out of the insolvency of any insurer. *Bullock,* 457 A.2d at 1290. Thus, the statute did not apply and PIGA was not entitled to setoff the plaintiff's recovery from her disability insurer. *Bullock,* 457 A.2d at 1290.

The Pennsylvania court noted that this result was consistent with the purpose of avoiding financial loss as a result of the insolvency of an insurer. *Bullock,* 457 A.2d at 1290. The court further stated that the exhaustion provision

> functions to prevent windfall judgments, such as might occur where, for example a tortfeasor's insurance company becomes insolvent, and a claimant seeks recovery on his own uninsured motorist coverage, as well as from PIGA as successor to the insolvent insurer. . . . Such a double recovery would exceed the loss–prevention purposes of the Act.

*Bullock,* at 494. Because the plaintiff in that case was in no better position than she would have been had the defendant's insurer remained solvent, there was no windfall judgment and PIGA was not entitled to setoff. *Bullock,* 457 A.2d at 1291.[4]

---

[4]We note that *Bullock* is in no way inconsistent with *Prutzman.* The *Prutzman* court held simply that plaintiffs must exhaust their own insurance coverage before seeking recovery from WIGA. *Prutzman,* 90 Wn.2d at 122. The Pennsylvania Supreme Court's discussion of the policy preventing double recovery indicates that it would impose the requirement. *See Bullock,* 457 A.2d at 1290–91.

We agree with the result reached by the Pennsylvania court and with the court's discussion of the purpose of the exhaustion provision. However, we are unable to agree with the *Bullock* court that this result follows from the plain words of the statute. Rather, we believe a literal reading of RCW 48.32.100(1) leads to inconsistent and absurd results.

The statute allows WIGA to offset recovery on a claim only if it is "also a covered claim." RCW 48.32.030(4) defines a "covered claim" as one arising out of a policy issued by an *insolvent* insurer. Accordingly, since McKinstry's primary insurer was not insolvent, WIGA is not entitled to offset the primary insurer's payments. This conclusion is also compelled by the fact that under RCW 48.32.030(4), a "covered claim" must also be "an unpaid claim." McKinstry *was* paid by its primary insurer. Thus, if one gives meaning to all the terms as statutorily defined, it is difficult to posit *any* situation where the offset provision would come into play.

■ Because of these practical inconsistencies and ambiguities, we resolve the issue before us by reference to the purpose of the Act and to the purpose of the exhaustion provision itself. The purpose of the Act is to avoid "financial loss to claimants or policyholders because of the insolvency of an insurer", RCW 48.32.010, while the purpose of the exhaustion provision is to avoid duplication of recovery and prevent windfall judgments. Allowing WIGA to offset a primary insurer's payment would contravene these purposes. In addition, requiring WIGA to step into the shoes of the insolvent excess insurer places the claimant who has purchased two layers of insurance in no better position than it would have been had the excess insurer remained solvent. Thus, the purpose of preventing double recovery would not be contravened by requiring WIGA to step into the shoes of the insolvent excess insurer.

RCW 48.32.910 requires us to liberally construe the Act to effect its purposes. We hold that WIGA cannot offset payments by a primary insurer when it is standing in the shoes of an insolvent excess insurer.

Reversed.

WINSOR and FORREST, JJ., concur.

Review denied at 114 Wn.2d 1017 (1990).