[No. 26850-3-I.    Division One.    September 16, 1991.]

WASHINGTON INSURANCE GUARANTY ASSOCIATION, *Appellant*, v. DAVID K. MULLINS, ET AL, *Respondents*, FRANK COLUCCIO CONSTRUCTION COMPANY, INC., *Appellant*.

*Arnold J. Barer* and *Weckworth, Barer & Meyer,* for appellant Washington Insurance Guaranty Association.

*James L. Phillips* and *Preston Thorgrimson Shidler Gates & Ellis,* for appellant Frank Coluccio Construction Company.

*Russell A. Austin, Jr.,* and *Kargianis, Austin & Osborn,* for respondents.

GROSSE, C.J. — Washington Insurance Guaranty Association (WIGA) and Frank Coluccio Construction Company (Coluccio) appeal from an order denying their motions for summary judgment and granting David and Kathleen Mullins' motion for summary judgment in an

action to determine rights under the Washington Insurance Guaranty Association Act. The main issue is whether the amount WIGA owes the Mullins should be reduced by the amount of David Mullins' benefits under RCW 41.26, the Washington Law Enforcement Officers' and Fire Fighters' Retirement System Act (LEOFF). Additionally, Coluccio appeals the determination that WIGA would be liable only up to the limit set by the Washington Insurance Guaranty Association Act, RCW 48.32 *et seq.* (the Act).

The facts are essentially undisputed. David Mullins was injured while working as a Seattle fire fighter on and around a Coluccio construction site. Mullins applied for disability benefits from the LEOFF retirement system and was granted permanent disability status. Mullins then brought a personal injury action against Coluccio. Coluccio was insured for $3 million by Pacific Marine Insurance Co. (PacMar). In June of 1989 PacMar was adjudged insolvent and ordered to liquidate. WIGA therefore assumed its duty to defend the personal injury action pursuant to the Act.

WIGA subsequently brought an action for declaratory relief against Coluccio and Mullins. Specifically, WIGA sought a declaration that any amount it owed to Mullins under the Act should be reduced by the amount of Mullins' LEOFF benefits. WIGA also sought a declaration granting immunity to Coluccio for personal injury liability to the extent Mullins' claim is covered under the Act. Alternatively, WIGA sought a declaration that LEOFF benefits are not subject to the collateral source rule and may be considered in a personal injury action.

All parties moved for summary judgment. The trial court granted Mullins' motion holding that WIGA is not entitled to offset Mullins' LEOFF benefits and further held that the collateral source rule precludes Coluccio from offsetting those benefits against any judgment in the personal injury action. The trial court also held that

WIGA's potential liability in the personal injury action is limited by statute to $300,000.

After WIGA and Coluccio filed notices of appeal in this action, the underlying personal injury action brought by Mullins against Coluccio went to trial. The jury returned a verdict in favor of Mullins in the sum of $208,415. However, the verdict was reduced by the jury's finding that Mullins was 80 percent contributorily negligent. The net result was an award of $41,683 to Mullins.

WIGA contends the trial court erred in granting summary judgment for Mullins in holding as a matter of law that Mullins' claim was a "covered claim" pursuant to RCW 48.32.030(4). The Act is designed to relieve the hardship caused insureds by the insolvency of an insurance company. Under RCW 48.32.010, the purpose of the Act

> is to provide a mechanism for the payment of covered claims under certain insurance policies to avoid excessive delay in payment and to avoid financial loss to claimants or policyholders because of the insolvency of an insurer, to assist in the detection and prevention of insurer insolvencies, and to provide an association to assess the cost of such protection among insurers.

The Act is limited in scope and applies to

> all kinds of direct insurance, *except* life, title, surety, disability, credit, mortgage guaranty, workers' compensation and ocean marine insurance.

(Italics ours.) RCW 48.32.020.

> A *covered claim* is:

> an unpaid claim, including one for unearned premiums, which arises out of and is within the coverage of an insurance policy to which this chapter applies issued by an insurer, if such insurer becomes an insolvent insurer after the first day of April, 1971 . . . "Covered claim" shall not include any amount due any reinsurer, insurer, insurance pool, or underwriting association, as subrogation recoveries or otherwise . . ..

RCW 48.32.030(4).

After an insurance company is determined to be insolvent and thus unable to pay a claim, WIGA steps into the

shoes of the insolvent insurer. *Washington Ins. Guar. Ass'n v. McKinstry Co.*, 56 Wn. App. 545, 549, 784 P.2d 190, *review denied*, 114 Wn.2d 1017 (1990). WIGA is deemed to be the insurer to the extent of its obligation on covered claims. To that extent WIGA has all rights, duties, and obligations of the insolvent insurer as if the insurer were not insolvent. RCW 48.32.060(1)(b). The Act limits WIGA's obligation to the amount of each covered claim in excess of $100 and less than $300,000. RCW 48.32.060(1)(a).

The Act contains a provision to prevent the duplication of recovery. RCW 48.32.100(1) states:

> Any person having a claim against his insurer under any provision in his insurance policy which is also a covered claim shall be required to exhaust first his right under such policy. Any amount payable on a covered claim under this chapter shall be reduced by the amount of such recovery under the claimant's insurance policy.

This nonduplication provision of the Act was adopted to prevent a party from collecting under another policy (*i.e.*, uninsured motorist) and then collecting for the same thing under the Act.

█ The trial court concluded this section of the Act did not entitle WIGA to offset Mullins' LEOFF benefits because the provision is limited by its terms to *insurance policies* available for the payment of a claim.[1] We agree with the trial court. When a statute is clear and unambiguous, the meaning of the statute must be derived solely from the language of the Act. *In re Eaton*, 110 Wn.2d 892, 898, 757 P.2d 961 (1988) (citing *Everett Concrete Prods., Inc. v. Department of Labor & Indus.*, 109 Wn.2d 819, 822, 748 P.2d 1112 (1988), and other cases). The nonduplication provision of the Act is plainly limited to those funds available under another insurance policy. RCW 48.32.100(1). LEOFF benefits are paid under state law, not under an insurance policy. *Britton v. Safeco Ins. Co. of Am.*, 104 Wn.2d 518, 532, 707 P.2d 125 (1985).

---

[1] The trial court also held that the collateral source doctrine precluded Coluccio from reducing any adverse judgment by the amount of Mullins' benefits.

■■ Moreover, the express mention of one thing in a statute implies exclusion of another.

[W]here a statute designates . . . things whereupon the statute operates, the inference arises that the Legislature intended to omit other things not listed; "specific inclusions exclude implication." *Sulkosky v. Brisebois*, 49 Wn. App. 273, 277, 742 P.2d 193 (1987) (quoting *Washington Natural Gas Co. v. PUD 1*, 77 Wn.2d 94, 98, 459 P.2d 633 (1969))[.]

*In re Eaton*, 110 Wn.2d at 898; *Kreidler v. Eikenberry*, 111 Wn.2d 828, 835, 766 P.2d 438 (1989). Thus, the Act's express allowance of a setoff for benefits available under another insurance policy precludes the inference that the Legislature intended WIGA to offset other types of benefits.

In an attempt to counter this result, WIGA cites *Prutzman v. Armstrong*, 90 Wn.2d 118, 122, 579 P.2d 359 (1978), which states that the nonduplication or exhaustion provision(s) "is apparently designed to limit WIGA liability to situations in which no other source of recovery for damages exists." However, when read in context, the statement in *Prutzman* is not persuasive here. In the *Prutzman* case the claimant failed to exhaust all of the funds available to her under her own uninsured motorist policy. Therefore, she fell squarely within the terms of RCW 48.32.100(1) as having other policy sources available. The court did not suggest that other setoffs could be implied. *See also Bethea v. Forbes*, 519 Pa. 422, 548 A.2d 1215 (1988);[2] *Hetzel v. Clarkin*, 244 Kan. 698, 772 P.2d 800 (1989).[3] WIGA's reading of *Prutzman* has been criticized in *Washington Ins. Guar. Ass'n v. McKinstry*, 56 Wn.

---

[2]The *Bethea* court held that even though victims had settled under nontortfeasor driver's uninsured motorist policy for less than policy limits, the insurance guaranty association must defend the tortfeasor driver, whose insurance company was insolvent, for damages which might exceed the full amount of the uninsured policy.

[3]The *Hetzel* court held that the insurance guaranty association is entitled to a credit or offset for sums recovered under the nontortfeasor's own uninsured motorist policy. Therefore the potential liability of the guaranty association is equal to the difference between the statutory recovery limit and the coverage limit of the nontortfeasor victim's uninsured motorist policy.

App. at 550. There, the court held that "the statute pro-
vides for a reduction of WIGA's statutory obligation *only*
where a claimant has another source of recovery for the
claim *against the insolvent insurer*, not where a claimant
has *any* other source of recovery." We agree with the
*McKinstry* court.[4]

WIGA also contends that because Mullins' injuries will
be compensated by LEOFF benefits, his claim is not
"unpaid" and is not a "covered claim" under RCW 48.32-
.030(4). WIGA contends it has no obligation to pay Mul-
lins' claim to the extent he has been paid by the LEOFF
system. The Federal District Court for the Eastern Dis-
trict of Pennsylvania adopted similar reasoning in part in
*Besack v. Rouselle Corp.*, 706 F. Supp. 385, 386 (E.D. Pa.
1989). There the court held that a claimant who was paid
benefits by a private workers' compensation insurer did
not have a covered claim under Pennsylvania's insurance
guaranty system because the claim was not "unpaid". It is
apparent in *Besack* that the claimant received benefits
under a private insurance policy. Additionally, the
workers' compensation insurer had a subrogation right for
the amount it paid. The insurance guaranty act in Penn-
sylvania, like Washington, excludes from the definition of
"covered claim" any amount due the insurer as a subro-
gation recovery. *Besack*, 706 F. Supp. at 386; *see* RCW
48.32.030(4).

We do not find *Besack*'s reasoning persuasive in
this case. The definition of "covered claim" contained in
the Washington Act makes it clear that a covered claim is
one which arises under an insurance policy and has not
been paid by the insurance company due to its insolvency.
Under our Act, "unpaid" is not limited to those cases
where the claimant has received no funds from any
source. If a claim is not "covered", to the extent it has
been paid by another source, as WIGA asserts, then there
would be no need for the provision in the statute reducing

---

[4]At oral argument counsel for WIGA conceded that *McKinstry* gives his
argument considerable problems, yet did not fully concede the issue.

the "amount payable on a covered claim" by the amount recovered under another insurance policy. RCW 48.32-.100(1). A statute will be construed so that no portion of it is rendered meaningless or superfluous. *Stone v. Chelan Cy. Sheriff's Dep't*, 110 Wn.2d 806, 810, 756 P.2d 736 (1988); *Avlonitis v. Seattle Dist. Court*, 97 Wn.2d 131, 138, 641 P.2d 169, 646 P.2d 128 (1982).[5]

WIGA also argues that LEOFF benefits are analogous to workers' compensation benefits and that courts in other states have held that workers' compensation benefits may be offset against amounts due under insurance guaranty acts. *See Besack*, 706 F. Supp. at 386; *Ferrari v. Toto*, 383 Mass. 36, 417 N.E.2d 427, 428-29 (1981).

To counter this argument, Mullins cites the case of *Alabama Ins. Guar. Ass'n v. Magic City Trucking Serv., Inc.*, 547 So. 2d 849 (Ala. 1989), which held that workers' compensation benefits are not "insurance" benefits to be offset against amounts due under the insurance guaranty statute.[6] The *Magic City* court indicated the claimant received no windfall because he was in no better position than he would have been had the tortfeasor's insurance company remained solvent. *Alabama Ins. Guar. Ass'n v. Magic City Trucking Serv., Inc.*, 547 So. 2d at 852-53. Further, the *Magic City* court cited another case in which the Alabama association was prohibited from offsetting health insurance benefits because the Alabama guaranty act was expressly made inapplicable to health insurance. *See Alabama Ins. Guar. Ass'n v. Stephenson*, 514 So. 2d 1000, 1002-03 (Ala. 1987). We find that under the facts of the case before us, the reasoning of the Alabama case is persuasive.

As set out above, RCW 48.32.020 does not apply to disability and/or workers' compensation insurance and

---

[5]Our research has uncovered no legislative history indicating the Legislature intended a contrary result.

[6]The language used in the definition of "covered claim" in Alabama's insurance guaranty act is identical to Washington's except for the effective date (January 1, 1981, in Alabama).

therefore the claim presented here is a covered claim under the statute. The trial court did not err.

■ Next WIGA argues that the trial court improperly applied the collateral source rule. The collateral source rule applies when an injured victim receives payments for his or her injuries from a source wholly independent of the tortfeasor. *Ciminski v. SCI Corp.*, 90 Wn.2d 802, 804, 585 P.2d 1182 (1978); *see also Lyons v. Freeborg*, 3 Wn.2d 380, 381, 100 P.2d 1041 (1940). The policy behind the rule is that the wrongdoer should not benefit from collateral payments made to the person he has wronged. *Ciminski*, 90 Wn.2d at 805. The collateral source rule applies to disability pension benefits. *Sutton v. Shufelberger*, 31 Wn. App. 579, 583, 643 P.2d 920 (1982); *Boeke v. International Paint Co. (Cal.), Inc.*, 27 Wn. App. 611, 617-18, 620 P.2d 103 (1980), *review denied*, 95 Wn.2d 1004 (1981). *See also Bullock v. Pariser*, 311 Pa. Super. 487, 457 A.2d 1287 (1983).[7]

WIGA claims that because it stands in the shoes of the insolvent insurer and therefore must pay any judgment against Coluccio, no "wrongdoer" (Coluccio) will benefit by offsetting the judgment by the amount of Mullins' LEOFF benefits. WIGA relies on *Britton v. Safeco Ins. Co. of Am.*, 104 Wn.2d at 531, where the court held, in part, that a policy provision offsetting underinsured motorist benefits by the amount of the disability benefits would be valid if the policy was issued before the effective date of the underinsured motorist statute. The *Britton* court rejected the insured's argument that the setoff clause was invalid under the collateral source rule, stating:

> The policy of that rule is "that the wrongdoer should not benefit from collateral payments made to the person he has wronged." Although in uninsured motorist cases it is often said that the insurer stands in the shoes of the uninsured motorist, the insurer has, in fact, done nothing morally or legally culpable, hence is not a "wrongdoer" within this equa-

---

[7] In *Bullock* the court held that recovery from a disability insurer was not a covered claim because it did not arise out of the insolvency of any insurer.

> tion; furthermore, the tortfeasor who caused the insured's injury in this case would in no way benefit from the setoff. . . . We perceive no rational basis for applying the collateral source rule to this insurance contract where the parties by their contract have agreed to set off disability benefits against amounts payable under underinsured motorist coverage.

(Footnotes omitted.) *Britton*, 104 Wn.2d at 529-30. Although this language seems to support WIGA's argument, *Britton* is distinguishable in that there the insured attempted to use the collateral source rule to override an express *contractual* setoff provision. The case before us does not involve any contractual setoff provision, nor, as discussed above, does the statute authorize any setoff for disability benefits. Further, unlike *Britton*, WIGA has stepped into the shoes of the *wrongdoer's* insurer. In *Britton*, the injured party was attempting to collect under his own policy. No wrongdoer was involved there at all. On this issue, *Britton* simply stands for the proposition that the collateral source rule does not preclude an insurer and an insured from negotiating a setoff agreement.

WIGA correctly states that one of the purposes of the Act is to place the claimant in the same position as he or she would have been had the liability insurer remained solvent. *See McKinstry*, 56 Wn. App. at 549. Therefore we ask and answer the rhetorical question: What is the result here had PacMar, Coluccio's liability insurance company, not become insolvent? The answer is that Mullins would have sued Coluccio and, under the collateral source rule, Coluccio could not have introduced evidence of Mullins' LEOFF benefits, nor could it have reduced any judgment by the amount of those benefits. Thus, disallowing a setoff here puts the parties in the same position had PacMar remained solvent. The trial court was correct in so holding.

■ In the appeal filed by Coluccio, it contends it is entitled to the protection from WIGA up to the $3 million limit of the now defunct policy, not only to the $300,000

statutory limit of WIGA's obligation.[8] As noted above, the net result of that trial was a judgment for $41,683. Consequently, as counsel for Coluccio acknowledged, the issue is moot. We decline to address the issue.

"A case is moot if a court can no longer provide effective relief", *In re Cross*, 99 Wn.2d 373, 376-77, 662 P.2d 828 (1983), and the issues it presents are "purely academic". *State v. Turner*, 98 Wn.2d 731, 733, 658 P.2d 658 (1983).

*Kuehn v. Renton Sch. Dist. 403*, 103 Wn.2d 594, 597, 694 P.2d 1078 (1985).

The decision of the trial court is affirmed.

COLEMAN and KENNEDY, JJ., concur.

---

[8]This claim on appeal was brought by Coluccio to protect itself should the judgment in the personal injury accident have exceeded the $300,000 statutory limitation. RCW 48.32.060(1)(a).