84 P.3d 940 (2004)
Shaunazee K. SHEPARD, individually and as Guardian Ad Litem for Madison Moon, a minor, Appellant,
v.
WASHINGTON INSURANCE GUARANTY ASSOCIATION, a nonprofit unincorporated entity, Respondent.
No. 30218-7-II.
Court of Appeals of Washington, Division 2.
February 18, 2004.
*941 Mary R. DeYoung, Reed McClure, Seattle, for Respondent.
Douglas James Kaukl, Pendergrass & Kaukl Inc PS, Puyallup, for Appellant.
ARMSTRONG, J.
Shaunazee Shepard and her daughter were injured in an auto accident caused by a driver whose liability insurer became insolvent. Shepard appeals a summary judgment in favor of the Washington Insurance Guaranty Association (WIGA). She argues that WIGA is not entitled to offset its liability by amounts her own auto and medical insurers paid to her and her daughter for their injuries. We disagree and, therefore, affirm.

FACTS
Shepard and her daughter, Madison Moon, suffered serious personal injuries in an automobile accident in Pierce County in August 2001. Shepard, who was pregnant with Madison at the time of the accident, was a passenger in the vehicle driven by Young Moon. Madison's medical bills exceeded $130,000. Shepard's medical bills exceeded $30,000; some of her injuries are permanent.
Reliance Insurance Company provided liability insurance for Young Moon with limits of $50,000 per person and $100,000 per accident. Shepard also had automobile insurance through Unigard and medical insurance through Regence Blue Cross. Shepard and her daughter each recovered $25,000 from her underinsured motorists (UIM) coverage and $10,000 from her personal injury protection (PIP) coverage. In addition, Shepard recovered $20,484.31 from her medical insurance and Madison recovered $83,850.70.
In October 2001, a Pennsylvania court declared Reliance insolvent and ordered its liquidation. The parties agree that, at least to some extent, WIGA stepped into the shoes of Reliance once it became insolvent. WIGA is a nonprofit, unincorporated entity established by statute to assume the liabilities of insurance companies doing business in Washington that become insolvent. Chapter 48.32 RCW.
After collecting the benefits from Regence and Unigard, Shepard presented a claim to WIGA. WIGA denied liability, arguing that under RCW 48.32.100 it was entitled to offset the amounts Regence and Unigard had paid. And, according to WIGA, because Regence and Unigard had already paid more than Reliance's policy limit of $50,000 for each claim, WIGA owed nothing.
The underlying tort action against Young Moon was stayed, and Shepard sought a declaratory judgment to establish WIGA's liability. Both parties moved for summary judgment. The trial court granted WIGA's motion, ruling that WIGA could offset the full amounts of the Regence and Unigard payments. Because these amounts exceeded WIGA's liability for covered claims (Reliance's $50,000 limit for each), the court found that WIGA's obligation was "completely offset and negated." Clerk's Papers (CP) at 76-78.

ANALYSIS
When reviewing an order of summary judgment, we engage in the same inquiry as the trial court. Wilson v. Steinbach, 98 *942 Wash.2d 434, 437, 656 P.2d 1030 (1982). Summary judgment is appropriate only if the pleadings, affidavits, depositions, and admissions on file demonstrate the absence of any genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. CR 56(c).

I. Liability Offsets
The Washington Insurance Guaranty Association Act (Chapter 48.32 RCW) is intended "to provide a mechanism for the payment of covered claims under certain insurance policies... and to avoid financial loss to claimants or policyholders." RCW 48.32.010. A "[c]overed claim" is defined as, "an unpaid claim ... which arises out of and is within the coverage of an insurance policy" of an insolvent insurer. RCW 48.32.030(4). WIGA is "deemed the insurer to the extent of its obligation on the covered claims" and has "to such extent ... all rights, duties, and obligations of the insolvent insurer." RCW 48.32.060(1)(b). But it is obligated only for "that amount of each covered claim which is in excess of one hundred dollars and is less than three hundred thousand dollars," and it is not liable for any amount exceeding the "face amount of the policy from which the claim arises." RCW 48.32.060(1)(a).
The Act also requires a claimant to exhaust all claims under other policies and allows WIGA to reduce its liability by what a claimant receives under his or her insurance policies. RCW 48.32.100(1) states:
Any person having a claim against his insurer under any provision in his insurance policy which is also a covered claim shall be required to exhaust first his right under such policy. Any amount payable on a covered claim under this chapter shall be reduced by the amount of such recovery under the claimant's insurance policy.
Under this language, the court has allowed WIGA to offset a claimant's $15,000 underinsured motorists coverage against WIGA's $15,000 liability for the insolvent carrier's coverage even though the claimant settled her underinsured motorists claim for $12,600. Prutzman v. Armstrong, 90 Wash.2d 118, 579 P.2d 359 (1978). The court held that Prutzman's claim failed for two reasons: (1) she did not exhaust the $15,000 limits of her underinsured motorists coverage, and (2) WIGA was liable only for the amount the insolvent carrier's liability exceeded Prutzman's own coverage. Prutzman, 90 Wash.2d at 122, 579 P.2d 359.
WIGA contends that because Shepard and her daughter have each recovered more from their own insurance companies than the insolvent carrier's $50,000 limit, Prutzman denies them any recovery from WIGA. Shepard maintains that Prutzman is distinguishable and that we should look to the Act's full compensation purpose to resolve her dispute with WIGA. In support of her policy argument, Shepard points to language in Washington Ins. Guar. Ass'n v. Mullins, 62 Wash. App. 878, 816 P.2d 61 (1991) and Washington Ins. Guar. Ass'n v. McKinstry Co., 56 Wash. App. 545, 550, 784 P.2d 190 (1990).
In Mullins, the court refused to allow WIGA to offset the claimant's disability benefits payable under a statutory retirement scheme. Mullins, 62 Wash.App. at 882-83, 816 P.2d 61. The court held that the plain language of RCW 48.32.100(1) limits WIGA's offset to funds available under another insurance policy; and the claimant's LEOFF benefits were paid under state law, not an insurance policy. Mullins, 62 Wash.App. at 882, 816 P.2d 61.
In McKinstry, WIGA stepped into the shoes of an insolvent umbrella insurance carrier and tried to offset amounts paid by its insured's primary carrier. WIGA relied in part on Prutzman's language that the "`exhaustion provision is apparently designed to limit WIGA liability to situations in which no other source of recovery for damages exists.' " McKinstry, 56 Wash.App. at 550, 784 P.2d 190 (quoting Prutzman, 90 Wash.2d at 122, 579 P.2d 359). The court rejected the argument, holding that WIGA can offset recovery only on a "covered claim," which is an unpaid claim arising out of the insolvent insurer's policy. McKinstry, 56 Wash.App. at 553, 784 P.2d 190. The court reasoned that the primary insurer's payment was not on a covered claim because the insured's primary carrier was solvent and the claim was paid. McKinstry, 56 Wash.App. at 553, 784 P.2d *943 190. The court concluded that WIGA was not entitled to offset the primary carrier's payment.
In reaching this result, the court found "inconsistencies and ambiguities" in the Act and believed that it had to resort to the Act's purposes to resolve the issue. McKinstry, 56 Wash.App. at 553, 784 P.2d 190. We do not find the same inconsistencies and ambiguities either here or in McKinstry. In McKinstry, the primary carrier was solvent and paid its $500,000 limit. Although the opinion does not tell us, the insolvent excess carrier's coverage was most likely triggered by the primary carrier's payment. "An excess carrier's obligation to pay and defend begins when, and only when, the limits of the primary insurance policy are exhausted." Rees v. Viking Ins. Co., 77 Wash. App. 716, 719, 892 P.2d 1128 (citing Truck Ins. Exch. of Farmers Ins. Group v. Century Indem. Co., 76 Wash.App. 527, 531, 887 P.2d 455 (1995)). And WIGA is entitled to an offset only for a covered claim, which is a claim within the insolvent carrier's coverage. RCW 48.32.010; .030(4). If the excess carrier covers only that part of the claim in excess of the primary carrier's limits, the primary payment was not within the insolvent excess carrier's coverage. Thus, the Act's offset provision never applied.
Here, the insolvent liability carrier's coverage applied to the same claims Shepard's UIM, PIP, and medical insurance covered. Proios v. Bokeir, 72 Wash.App. 193, 863 P.2d 1363 (1993). Thus, WIGA is entitled to offsets for these payments.

II. Application of Offsets and Negation of Liability
Shepard next argues that if the offsets are allowed, they should be deducted from the full value of her and her daughter's claims rather than the insolvent insurer's policy limits.
But the plain language of RCW 48.32.060 tells us otherwise. WIGA is entitled to take offsets against any "amount payable on a covered claim under this chapter." RCW 48.32.100. The amount payable is the "face amount of the policy" from which the covered claim arises. RCW 48.32.060(1)(a). WIGA "assumes the responsibilities of insolvent insurers, and provides coverage to the insured for the lesser of the policy amount or $300,000." Washington Ins. Guar. Assn. v. State Dept. of Labor and Industries, 122 Wash.2d 527, 531, 859 P.2d 592 (1993) (citing RCW 48.32.060). When statutory language is unambiguous, we must follow its plain meaning. State v. Chester, 133 Wash.2d 15, 21, 940 P.2d 1374 (1997).
Shepard also contends that underinsured motorists coverage "is a `floating' coverage that is not available to reduce or diminish applicable liability coverage," citing Elovich v. Nationwide Ins. Co., 104 Wash.2d 543, 707 P.2d 1319 (1985). App. Br. at 13. And, according to Shepard, WIGA's position assumes that underinsured motorists coverage "drops down" to become primary coverage if the liability carrier is insolvent, thus denying her the benefit of a "floating" layer of coverage above the liability limits. App. Br. at 13. Underinsured motorists coverage does, however, provide first dollar coverage if the liability insurer becomes insolvent. RCW 48.22.040. Moreover, Shepard's argument runs counter to both Prutzman and Proios, which specifically allowed WIGA credits for the insured's underinsured motorists coverage. Prutzman, 90 Wash.2d 118, 579 P.2d 359; Proios, 72 Wash.App. 193, 863 P.2d 1363.
Finally, Shepard maintains that Proios supports her argument that WIGA must take its credit against the full value of Shepard's claims. In Proios, the trial court deducted underinsured motorists, PIP, and medical insurance payments from the $110,000 jury verdict even though the insolvent liability carrier's limit was $100,000. Proios, 72 Wash.App. at 196, 863 P.2d 1363. But WIGA was not a party in Proios and the defendant did not argue that the credits should have been taken against the $100,000 liability limit rather than the $110,000 verdict. Because the court did not consider the issue, Proios is not helpful.
We conclude that under the plain language of RCW 48.32.100, WIGA is entitled to take its offsets against the limits of the insolvent *944 carrier, $50,000 on each claim, not the total value of Shepard's claims.
Affirmed.
We concur: HOUGHTON, P.J., and BRIDGEWATER, J.