LeBLANC, Judge.
During March of 1988, plaintiff, Linda T. Hebert,[1] filed suit against Susan Martin and Champion Insurance Company (Champion), Martin’s automobile liability insurer, in which plaintiff sought damages for personal injuries sustained by her in an automobile accident. The vehicle driven by Susan Martin allegedly crashed into the rear of plaintiff’s vehicle as plaintiff prepared to make a right turn.
Subsequently, plaintiff received $4,856.27 for medical expenses from her automobile liability insurer, Allstate Insurance Company (Allstate), pursuant to the medical payments provisions of the policy.
During November of 1988, plaintiff and defendants entered into a settlement agreement, whereby Champion agreed to pay to plaintiff $20,000.00, representing the full limits of the Champion policy, in exchange for which plaintiff’s claims against defendants were to be settled in full. Before the settlement funds could be disbursed to plaintiff, Allstate made a subrogation demand against Champion to recover the $4,856.27 it had paid to plaintiff.[2] As a result of Allstate’s claim, counsel for all parties consented that the funds would be disbursed by the payment of $15,200.00 directly to plaintiff and a draft would be made payable to plaintiff and Allstate jointly for the balance of $4,800.00. Before plaintiff and Allstate resolved their claims to the $4,800.00, Champion was declared insolvent and the Louisiana Insurance Guaranty Association (LIGA) was substituted as defendant for Champion.[3]
Pursuant to the Insurance Guaranty Association Law, La.R.S. 22:1375 et seq., LIGA is not obligated to pay any amount due an insurer as subrogation recoveries. Thus, according to plaintiff’s and LIGA’s briefs, Allstate abandoned its subrogation claim to the $4,800.00. At this point, plaintiff filed a rule to recover settlement funds against LIGA, in which she alleged that all settlement funds had been disbursed except the draft of Champion in the amount of $4,800.00, that Allstate had withdrawn its claims to these funds, that Champion was a member of the Insurance Guaranty Association and that the $4,800.00 is a “covered claim” for which LIGA is responsible. Plaintiff sought a reissuance of the draft to her by LIGA. After a hearing in this matter, the trial court rendered judgment in favor of plaintiff, Linda T. Hebert, and against defendant, LIGA, in the sum of Four Thousand Seven Hundred ($4,700.00) Dollars, representing the full amount of plaintiff’s claim less the $100.00 deductible authorized by La.R.S. 22:1382.[4]
LIGA has appealed contending that the trial court erred in rendering judgment in plaintiff’s favor. LIGA asserts that the trial court’s judgment results in a double recovery of insurance benefits by plaintiff which should have been prevented by application of La.R.S. 22:1386.
At the time of the trial in this matter, La.R.S. 22:1386(1) provided as follows:
Any person having a claim against an insurer under any provision in an insurance policy other than a policy of an insolvent insurer which is also a covered claim, shall be required to exhaust first *145 his right under such policy. Any amount payable on a covered claim under this Part shall be reduced by the amount of any recovery under such insurance policy.
LIGA does not dispute that the $4,800.00 is a “covered claim” within the context of the Insurance Guaranty Law.[5] However, LIGA does contend that plaintiffs “covered claim” should be reduced by the $4,800.00 she received from Allstate, asserting that her claim against Allstate was “a claim against an insurer under any provision in an insurance policy other than a policy of an insolvent insurer which is also a covered claim” and that the $4,800.00 which plaintiff recovered from. Allstate is “recovery under such insurance policy”. We agree.
The general rule is that LIGA is deemed the insurer to the extent of its obligation on the covered claims and to such extent shall have all rights, duties and obligations of the insolvent insurer as if the insurer had not become insolvent. La. R.S. 22:1382 A(2). Also see, Hickerson v. Protective Nat. Ins. Co., 383 So.2d 377 (La.1980). However, an exception to this general rule is stated in 22:1386(1) under which recovery can be had against LIGA only to the extent recovery is not obtained under another insurance policy. Since plaintiff has recovered $4,800.00 pursuant to an insurance policy other than the Champion policy, LIGA’s liability shall be reduced by that amount. Any other interpretation of La.R.S. 22:1386(1) would render it meaningless. Furthermore, the stated purpose of the Insurance Guaranty Association Law, to avoid financial loss to claimants because of the insolvency of an insurer, is not defeated by this application of La.R.S. 22:1386(1) because plaintiff has received a total sum of $20,000.00 in insurance benefits, an amount commensurate to the policy limits of the Champion policy. Since LIGA’s liability for the $4,800.00 covered claim is reduced by the same amount pursuant to La.R.S. 22:1386(1), plaintiff is not entitled to a judgment against LIGA.[6]
For the reasons expressed herein, the judgment of the trial court is reversed. Costs of this appeal are to be paid by plaintiff-appellee.
REVERSED.

. The original petition also named Keith A. Hebert, individually and as administrator of the estate of his minor child, Michelle Hebert, as a plaintiff. However, Mr. Hebert is not a party to this appeal.

. During oral arguments, counsel for both parties stated that Allstate’s subrogation demand was made after the settlement was effected between plaintiff and defendants.

. The record does not clearly establish whether the $15,200.00 sum was paid to plaintiff by Champion or by LIGA. However, plaintiff does not contest that she has received this sum of money.

. Pursuant to La.R.S. 22:1382 A(l), (6) LIGA is only responsible for covered claims in excess of $100.00.

. A "covered claim” is defined in La.R.S. 22:1379(3), in pertinent part, as "an unpaid claim ... which arises out of and is within the coverage and not in excess of the applicable limits of an insurance policy to which this Part applies issued by an insurer, if such insurer becomes an insolvent insurer after September 1, 1970....

. Accordingly, plaintiff-appellee’s claim for damages for frivolous appeal is without merit.