[No. 31643-5-I.   Division One.   December 27, 1993.]

ELEFTHERIA XENOS PROIOS, *Appellant,* v. JAMAAN BOKEIR, ET AL, *Respondents.*

---

194

*Robert B. Gould* and *Law Offices of Robert B. Gould,* for appellant.

*Arnold J. Barer; Douglas R. Soderland* and *Wilson, Smith, Cochran & Dickerson,* for respondents.

COLEMAN, J. — Eleftheria X. Proios appeals the trial court's order awarding her $72,733 for personal injuries. She argues that (1) the trial court did not have jurisdiction to grant offsets because the Washington Insurance Guaranty Association (WIGA) was not a party, (2) the trial court erred in granting

offsets because her claims under other insurance policies were not "covered claims", and (3) the trial court erred in granting offsets for payments made to her by King County Medical Blue Shield (KCMBS), in granting offsets for underinsured motorist (UIM) payments made by her own insurance carrier, and in granting offsets for personal injury protection (PIP) payments made to her by her own insurance carrier. We affirm.

On April 16, 1990, Proios was struck by a taxi while crossing the street. The driver of the taxi, Bokeir, and the owner, Alborz (collectively referred to as Bokeir) conceded that they were liable for Proios's injuries, and the only issue at trial was the amount of damages.

At the time of the accident, Bokeir had a $100,000 liability insurance policy with Universal Security Insurance Company (USIC). In October 1991, USIC was declared insolvent and, pursuant to RCW 48.32, WIGA took over USIC's obligation to defend and indemnify Bokeir.

Prior to trial, Proios's own insurance carrier, Allstate Insurance, paid her $10,000 in PIP benefits and $25,000 in UIM coverage. In addition, she received $4,222.82 in medical benefits from KCMBS.

On July 7, 1992, Proios moved to amend her complaint to add WIGA as an additional party. The trial court denied the motion. On July 10, 1992, Bokeir moved for summary judgment, claiming that he was entitled to offset the amounts that Allstate and KCMBS had paid to Proios (approximately $40,000) from any judgment against him. The trial court granted the motion with regard to the Allstate payments, but withheld judgment on the KCMBS payments pending the outcome of the trial. On August 21, 1992, the jury awarded Proios $110,000. The trial court granted offsets for the PIP payments, the UIM payments, and the KCMBS payments.[1] Proios appeals.

---

[1] Initially, the trial court mistakenly signed the judgment presented by Proios, which awarded her the entire $110,000. This judgment was stricken, and a new judgment, allowing the offsets, was signed.

We first consider whether the trial court had jurisdiction to grant offsets even though WIGA was not a party to the action.

In order to determine the question before it, a court must have jurisdiction over the subject matter of the action and over the parties. *State v. Swanson*, 16 Wn. App. 179, 189, 554 P.2d 364 (1976), *review denied*, 88 Wn.2d 1014, *cert. denied*, 434 U.S. 967 (1977). Here, Proios argues that the trial court did not have jurisdiction to grant offsets because offsets can only be granted to WIGA, which was not a party to the action.

■■ We find this argument unpersuasive. In *Urban v. Loham*, ___ Ill. App. 3d ___, 592 N.E.2d 292 (1992), the court explained the function of an insurance guaranty fund in a personal injury action:

> [A]n insurance company, or the Fund in the case of an insolvent insurer, is not liable as the tortious wrongdoer. Rather, the insurer or the Fund merely stands ready, pursuant to the policy, to indemnify the tortfeasor for a loss.

*Urban*, 592 N.E.2d at 296 (citing *Herriford v. Boyles*, 193 Ill. App. 3d 947, 550 N.E.2d 654 (1990)). The court further stated: "[T]he guaranty insurance fund statute does not contemplate an action directly against the Fund itself to determine a plaintiff's damages. Rather, a plaintiff's damages are determined as a collateral matter or in other proceedings." *Urban*, 592 N.E.2d at 296.

Although an insurance guaranty fund need not be an actual party to the action against the tortfeasor, at least one jurisdiction has concluded that a judgment against a tortfeasor may be reduced by offsets provided for in an insurance guaranty act. In *California Ins. Guar. Ass'n v. Liemsakul*, 193 Cal. App. 3d 433, 238 Cal. Rptr. 346 (1987), an injured party sued a truck driver and the truck's owner for negligence. The defendants' insurer was insolvent, and the California Insurance Guarantee Association (CIGA) brought a declaratory judgment action, seeking to reduce the amount of the injured party's covered claim by the amount of his

uninsured motorist (UM) coverage. While the injured party's suit against the truck driver and owner was pending, the trial court held that CIGA and the tortfeasors were entitled to a UM credit from any judgment obtained. *Liemsakul*, at 436.

On appeal, the injured party argued, among other things, that CIGA alone was entitled to the credit and that the credit should not benefit the tortfeasors. *Liemsakul*, at 441. The Court of Appeal disagreed, stating that the credit inures to the benefit of the insureds of the insolvent insurer as well as to CIGA. *Liemsakul*, at 442. This result, according to the court, was consistent with CIGA's purpose of protecting the insureds of insolvent insurers, as well as third party claimants. *Liemsakul*, at 442. Thus, even though CIGA was not a party to the injured party's action against the truck's owner and driver, the court allowed CIGA to seek a declaratory judgment for the offsets, thereby reducing the judgment against the tortfeasors.

We believe that the reasoning in *Liemsakul* applies equally well to the present case. The policy of protecting the insureds of insolvent insurers, as well as third party claimants, is equally applicable to the Washington statute. *See* RCW 48.32-.010. Also, while the present case differs from *Liemsakul* in that Bokeir, not WIGA, brought the summary judgment motion for the offsets, under *Liemsakul* this difference is immaterial because Bokeir was allowed to benefit from the offsets to which WIGA was entitled. Therefore, we reject Proios's argument that the trial court did not have jurisdiction to grant the offsets.

We next decide whether the trial court erred in granting the offsets because Proios's claims under her other policies were not paid by insolvent insurers and were therefore not "covered claims".

■ ■ In interpreting a statute, a court must attempt to ascertain the intent of the Legislature, which can only be derived from the language of the act as a whole. If more than one interpretation is possible, the court must choose the interpretation most consistent with the Legislature's

intent. *Washington Ins. Guar. Ass'n v. McKinstry Co.*, 56 Wn. App. 545, 548, 784 P.2d 190 (citing *Stewart Carpet Serv., Inc. v. Contractors Bonding & Ins. Co.*, 105 Wn.2d 353, 358, 715 P.2d 115 (1986)), *review denied*, 114 Wn.2d 1017 (1990).

RCW 48.32.100(1) (*"Nonduplication of recovery"*) provides in part: "Any person having a claim against his insurer under any provision in his insurance policy which is also a covered claim shall be required to exhaust first his right under such policy." RCW 48.32.030(4) provides, in pertinent part:

> "Covered claim" means an unpaid claim, including one for unearned premiums, which arises out of and is within the coverage of an insurance policy to which this chapter applies issued by an insurer, if such insurer becomes an insolvent insurer after the first day of April, 1971 and (a) the claimant or insured is a resident of this state at the time of the insured event; or (b) the property from which the claim arises is permanently located in this state.

Proios argues that under RCW 48.32.100(1), benefits conferred to her under other policies must constitute covered claims in order to "trigger the reduction provision of that statute". She further argues that because her UIM, PIP, and KCMBS payments were not provided by insolvent insurers, they do not constitute covered claims under the definition in RCW 48.32.030(4).

Although Proios sets forth a possible interpretation of the literal language of the statute, her interpretation conflicts with the case law and the policy behind the act. In *Prutzman v. Armstrong*, 90 Wn.2d 118, 122, 579 P.2d 359 (1978), the court stated that WIGA was entitled to offsets for UM coverage. In that case, the injured party had UM coverage of $15,000 and the tortfeasor had a $15,000 liability policy with an insolvent insurer. The injured party settled with her own carrier for less than her $15,000 UM coverage and then sought to recover the remainder from WIGA. *Prutzman*, at 119.

Interpreting RCW 48.32.100(1) (the nonduplication of recovery provision), the court held that the injured party

was not entitled to recover from WIGA because WIGA's obligation did not exceed her $15,000 UM limits. The court stated:

> Respondent must seek the full value of her claim up to $15,000 from her own insurer. The WIGA's maximum liability under the [insolvent insurer's] policy is $15,000, *minus the amount of any recovery from respondent's own insurer.* Thus, because the [insolvent insurer's] policy limit did not exceed respondent's coverage under her own insurance policy, respondent may look *only to her own insurance company for recovery.*

(Italics ours.) *Prutzman*, at 122. The court reasoned that this result was most consistent with the policy behind the exhaustion requirement in the nonduplication provision, which "is apparently designed to limit WIGA liability to situations in which no other source of recovery for damages exists." *Prutzman*, at 122. Thus, contrary to Proios's argument, payments do not have to come from insolvent insurers to qualify as offsets.[2]

Proios cites *McKinstry* and *Washington Ins. Guar. Ass'n v. Mullins*, 62 Wn. App. 878, 816 P.2d 61 (1991) to support her claim that offsets cannot be granted unless the amounts offset come from insolvent insurers. However, neither of these cases supports her position.

In *McKinstry*, the court held that WIGA, when standing in the shoes of an insolvent excess insurer, could not offset payments by a primary insurer because those payments were not covered claims. *McKinstry*, at 553.[3] The court acknowledged, however, that a literal reading of the nonduplication provision, such as the one Proios suggests, would lead to "inconsistent and absurd results". Under a literal reading of the provision, offsets would never be permitted because, as the court stated:

---

[2]In fact, as discussed *infra*, requiring payments to come from insolvent insurers makes no sense because if the insurers were insolvent, WIGA itself would likely be making the payments and the issue of offsets would not arise.

[3]The court distinguished *Prutzman*, stating that in *Prutzman*, the issue of whether the UM claim was a covered claim was not before the court. *McKinstry*, at 550. However, we believe that this conclusion (that the claim was a covered claim) can be inferred from the holding in *Prutzman. See Prutzman*, at 122.

The statute allows WIGA to offset recovery on a claim only if it is "also a covered claim." RCW 48.32.030(4) defines a "covered claim" as one arising out of a policy issued by an *insolvent* insurer. Accordingly, since McKinstry's primary insurer was not insolvent, WIGA is not entitled to offset the primary insurer's payments. This conclusion is also compelled by the fact that under RCW 48.32.030(4), a "covered claim" must also be "an unpaid claim." McKinstry *was* paid by its primary insurer. *Thus, if one gives meaning to all the terms as statutorily defined, it is difficult to posit any situation where the offset provision would come into play.*

*Because of these practical inconsistencies and ambiguities, we resolve the issue before us by reference to the purpose of the Act and to the purpose of the exhaustion provision itself.*

(Some italics ours.) *McKinstry*, at 553. The court then concluded that allowing WIGA to offset the payments would contravene the policy of the act, which is to avoid financial loss to the public. *McKinstry*, at 553. The court also concluded that denying the offset did not confer a windfall on the claimant, who would be placed in no better position than it would have been had the excess insurer remained solvent.

In *Mullins*, the court held that WIGA was not entitled to offsets for Washington Law Enforcement Officers' and Fire Fighters' benefits because the nonduplication provision limits offsets to funds available under other insurance policies. *Mullins*, at 887. The court stated that the "nonduplication provision of the Act was adopted to prevent a party from collecting under another policy (*i.e.*, uninsured motorist) and then collecting for the same thing under the Act." *Mullins*, at 882. Thus, *Mullins* supports the view that at least some of the offsets in the present case were proper.

██ As the court in *McKinstry* pointed out, allowing offsets only for claims paid by insolvent insurers would lead to absurd results, especially given that, under the literal language of the statute, these claims must also be "unpaid". We believe that the correct approach is to allow the offsets if they are consistent with the policy behind the act, which is to avoid financial loss to the public, and the policy behind the nonduplication provision, which is to prevent double recoveries. This is because the primary purpose of the act is to place the claimant in the same position he or she would

have been had the tortfeasor's insurer been solvent. *Mullins*, at 887 (citing *Washington Ins. Guar. Ass'n v. McKinstry Co.*, 56 Wn. App. 545, 549, 784 P.2d 190, *review denied*, 114 Wn.2d 1017 (1990)). Therefore, because the determination of whether to allow offsets must be made with the act's purposes and policies in mind, we conclude that the fact that the payments came from solvent insurers is not relevant to the issue of whether the offsets were proper.

We last consider whether the trial court erred in granting the offsets.

## A
### Offsets for UIM Payments

■ Offsets for UM/UIM benefits are proper and are precisely the type of benefits contemplated by the nonduplication provision. *See Prutzman*, at 122; *Mullins*, at 882. Proios argues that *Prutzman* is distinguishable because in that case the injured party settled with her UM carrier for less than her policy limits. However, the *Prutzman* court stated that "[t]he WIGA's maximum liability under the [insolvent insurer's] policy is $15,000, minus the amount *of any recovery* from respondent's own insurer." (Italics ours.) *Prutzman v. Armstrong*, 90 Wn.2d 118, 122, 579 P.2d 359 (1978). We believe that the conclusion in *Prutzman* that offsets for UM payments are allowed applies whether or not the injured party settles for less than his or her UM/UIM policy limits. *Prutzman*, at 122.

Proios further argues that *Prutzman* is wrongly decided and that the Allstate UIM policy should be viewed as an excess policy, like the policy in *McKinstry*. However, if the court in *McKinstry* had allowed the offsets, the plaintiff in that case would have been in a worse position than if the insurer remained solvent. *See McKinstry*, at 553. Here, on the other hand, allowing the UIM offsets puts Proios in the same position she would have been had Bokeir's insurer been solvent. Moreover, as Bokeir points out, numerous other jurisdictions agree that insurance guaranty associations are entitled to offsets for UM/UIM payments. *E.g.*, *California Ins. Guar. Ass'n v. Liemsakul*, 193 Cal. App. 3d 433, 238 Cal. Rptr.

346 (1987); *Urban v. Loham*, ___ Ill. App. 3d ___, 592 N.E.2d 292 (1992); *see also Bullock v. Pariser*, 311 Pa. Super. 487, 494, 457 A.2d 1287, 1290 (1983) ("The non-duplication of recovery provision . . . functions to prevent windfall judgments, such as might occur where . . . a tortfeasor's insurance company becomes insolvent, and a claimant seeks recovery on his own uninsured motorist coverage, as well as from PIGA"[.]). Thus, we hold that the trial court did not err in concluding that WIGA was entitled to offsets for the UIM payments made to Proios by Allstate.

## B
### Offsets for KCMBS Payments

Proios argues that if USIC had remained solvent, USIC and the defendants would not have been able to offset KCMBS payments because Proios did not seek reimbursement for medical bills, only for general damages and lost wages. She further argues that because KCMBS signed a subrogation waiver, she would not have been required to repay KCMBS if USIC had been solvent.[4]

We reject these arguments. First, Proios cites nothing to support her argument that because she did not seek reimbursement for medical bills as a segregated item (*i.e.*, special damages), KCMBS would not have been entitled to subrogation. The record indicates that evidence of Proios's medical expenses was before the jury, and it is reasonable to con-

---

[4]Proios cites *Thiringer v. American Motors Ins. Co.*, 91 Wn.2d 215, 588 P.2d 191 (1978) to support her claim that the KCMBS offsets were improper. However, as Bokeir points out, *Thiringer* only applies where an injured party has not been fully compensated for his or her loss. *See Thiringer*, at 219. Here, the offsets were allowed in order to prevent duplication of recovery, not to deprive Proios of full compensation for her loss.

Proios further cites two Alabama cases to support her claim, *Alabama Ins. Guar. Ass'n v. Magic City Trucking Serv., Inc.*, 547 So. 2d 849 (Ala. 1989) and *Alabama Ins. Guar. Ass'n v. Stephenson*, 514 So. 2d 1000, 1002-03 (Ala. 1987). Both are distinguishable. *Magic City* dealt with offsets for workers' compensation benefits. *Magic City*, at 851. *Stephenson* concluded that the Alabama insurance association could not offset health insurance benefits; however, unlike the Washington statute, the Alabama Insurance Guaranty Act expressly excludes health insurance benefits. *See Stephenson*, at 1002. Compare RCW 48.32.020.

clude that the jury took these expenses into account in determining the amount of general damages.

Second, as Bokeir argues, the record indicates that KCMBS's waiver of subrogation was based on RCW 48.32-.030(4), which bars subrogation claims by other insurers when WIGA steps into the shoes of an insolvent insurer.[5] Thus, it is unlikely that KCMBS would have waived its rights if USIC had been solvent, and Proios would have been required to reimburse KCMBS for the medical expenses that it covered. Therefore, allowing WIGA to offset the KCMBS payments placed Proios in the same position she would have been had USIC remained solvent, and we conclude that the trial court correctly allowed the offsets.

## C
### Offsets for PIP Payments

In support of her argument that offsets for the PIP payments were improper, Proios makes the following arguments: (1) the payments do not constitute covered claims and (2) because Proios did not specifically request reimbursement for medical bills, the PIP payments did not constitute duplication of recovery. We have previously addressed and rejected these arguments in our discussion of the UIM and KCMBS payments, and we apply the preceding analysis to the PIP payments as well.[6]

Proios also cites several cases from other jurisdictions that she believes support her position that PIP payments cannot be offset. We do not find these cases persuasive. First, *Alabama Ins. Guar. Ass'n v. Stephenson*, 514 So. 2d 1000 (Ala. 1987) and *Harris v. Lee*, 387 So. 2d 1145 (La. 1980) are distinguishable because the nonduplication provi-

---

[5]As Bokeir points out, RCW 48.31.020 defines KCMBS as an insurer for certain purposes, such as insolvency and liquidation.

[6]Proios also argues that Allstate was contractually required to make the payments regardless of whether USIC remained solvent. However, this argument would apply to *any* insurance coverage and, if accepted, would prevent offsets from ever being taken. The cases that have allowed offsets for other types of coverage demonstrate that this argument is meritless.

sions in those jurisdictions were expressly made inapplicable to the types of offsets sought in those cases. *See Stephenson*, at 1002 (no offset for employee health benefits where statute expressly excluded accident and health insurance); *Harris*, at 1146 (no offset for payments by plaintiff's group health insurer where nonduplication of recovery provision excluded accident and health insurance). Compare RCW 48.32.020 (accident and health insurance not listed among types of insurance excluded from chapter).

Second, Proios cites *Bullock v. Pariser*, 311 Pa. Super. 487, 457 A.2d 1287 (1983), in which the court held that the Pennsylvania Insurance Guaranty Association (PIGA) was not entitled to offsets for payments made to the injured party by her disability carrier because (1) PIGA waived the issue by not raising it at trial, (2) the claim was not a covered claim because it did not arise out of the insolvency of any insurer, and (3) the injured party was in no better position than she would have been had the insurer remained solvent. *Bullock*, at 1290-91. However, we have already determined that under the Washington statute, payments need not come from insolvent insurers to be subject to the nonduplication of recovery provision. In addition, the court in *Bullock* determined that the plaintiff in that case was in no better position than she would have been had the insurer remained solvent. Here, on the other hand, as discussed *infra*, denying the offset would create a windfall for Proios.

Moreover, other case law supports the conclusion that WIGA should be entitled to an offset for the PIP payments. In *Hebert v. Martin*, 583 So. 2d 143 (La. Ct. App. 1991), the injured party recovered approximately $4,800 in medical benefits under her own insurance policy (with Allstate). She then entered into a settlement agreement with the tortfeasor's insurer for $20,000, the tortfeasor's maximum policy limits. Because Allstate was entitled to recover the funds it had paid her, she would have received only $15,200. *Hebert*, at 144.

Prior to paying the settlement, the tortfeasor's insurer was declared insolvent, and the Louisiana Insurance Guar-

anty Act (LIGA) stepped in. Because, like Washington, Louisiana has a provision prohibiting subrogation claims against LIGA, Allstate abandoned its subrogation claim. The plaintiff then filed a petition demanding the entire $20,000. The trial court allowed the claim, and LIGA appealed. *Hebert*, at 144. Interpreting statutes substantially similar to the Washington statutes, the Court of Appeals agreed with LIGA that it was entitled to a $4,800 offset because those funds represented the amount that the injured party had recovered under another policy. *Hebert*, at 145.

We find the reasoning in *Hebert* persuasive. WIGA was intended to provide recovery only when there is no other source of insurance recovery available to the injured party. *Prutzman v. Armstrong*, 90 Wn.2d 118, 122, 579 P.2d 359 (1978). The nonduplication of recovery provision was intended to prevent a party from collecting under another policy and then collecting for the same thing under the act. *Mullins*, at 882. WIGA was therefore entitled to offset payments from Proios's own insurer, including PIP payments.

In addition, it appears from the record that Allstate would have been entitled to subrogation for PIP payments if USIC had been solvent. Therefore, allowing an offset for the PIP payments placed Proios in the same position she would have been had USIC remained solvent. For these reasons, we conclude that the trial court properly offset the PIP payments, as well as the UIM and KCMBS payments.[7]

The order of the trial court is affirmed.

SCHOLFIELD and GROSSE, JJ., concur.

---

[7]Proios also claims that the trial court erred in "striking the original judgment on the jury verdict of September 1, 1992" because "[t]he motion for a new judgment was both untimely and without meritorious rationale". Brief of Appellant, at 8. However, because she provides no argument to support her claim that the motion was untimely and because we have concluded that the offsets were properly granted, this claim is without merit.