DECISION
The plaintiff, Rhode Island Insurers' Insolvency Fund (the "Fund"), moves for reconsideration of the Court's November 29, 2006 decision ("Decision")[1] to deny the Fund's and the defendants', New Prime, Inc. and Prime, Inc. (collectively, "Defendants"), cross motions for summary judgment. The Defendants have objected to this motion. Jurisdiction is pursuant to Super. R. Civ. P. 59(e).
 Facts and Travel
On December 23, 2000, Irene Desautel ("Desautel") was injured in a motor vehicle accident involving a truck operated by Michael Grimm ("Grimm") and owned by the Defendants. Subsequently, on May 10, 2001, Desautel filed a negligence action in this Court against the Defendants and Grimm, who then filed a third-party complaint against Casco Indemnity ("Casco"), Desautel's automobile insurer, and United Healthcare ("United") and Healthcare Recoveries, Inc.[2], Desautel's health insurers. See PC-01-2344.
As a result of her injuries, Desautel collected $380,000 in medical payments from United. At the time of the accident, the Defendants and Grimm were insured by Reliance *Page 2 
National Insurance Company (Reliance) for bodily injury claims up to $4,000,000. However, before Desautel could recover under this policy, Reliance was declared insolvent and ordered liquidated. As a result, Desautel recovered $100,000 from Casco, the maximum allowed under her policy for uninsured/underinsured motorist coverage.[3] Additionally, she sought recovery from the Fund, a non-profit legal entity created by the state legislature pursuant to the Rhode Island Insurers' Insolvency Fund Act ("Act"). G.L. 1956 § 27-34-1 et seq.
Desautel then entered into negotiations with the Defendants and the Fund, ultimately agreeing to settle her claims for $900,000. The Defendants paid $600,000 of the settlement and the Fund contributed $300,000, while reserving its right to litigate the issue of its obligation to pay. On March 31, 2004, the Fund brought the instant action for declaratory relief, seeking a declaration that 1) the Fund's obligation to Desautel is reduced by the $100,000 she recovered under the Casco policy; 2) the Fund has the right to further offset the payments made to Desautel by United Healthcare; and 3) the Fund has no statutory obligation to Desautel to the extent that any recovery by Desautel and United would be payable to Casco and/or United.
The parties then filed cross-motions for summary judgment pursuant to Super. R. Civ. P. 56. The Fund argued that it bore no responsibility for paying any amount that would be due Casco and United because the Act specifically excludes any amount "[d]ue any reinsurer, insurer, insurance pool, or underwriting association, as subrogation recoveries or otherwise" from its definition of the "covered claims" for which the Fund is *Page 3 
responsible. Section 27-34-5(8)(ii)(C). Further, the Fund argued that Section 27-34-12(a), which governs the nonduplication of recovery, requires Desautel to exhaust her rights under all available insurance policies and grants the Fund an offset for any amount paid by another insurer. The Fund's contribution is statutorily capped at $300,000, and, as Desautel has recovered a total of $480,000 from her insurers, the Fund argued that this offset would reduce its obligation to nothing.
In their own motion for summary judgment, however, the Defendants claimed that United waived its right of subrogation when it signed a stipulation ("Stipulation") stating that it has no right to recover any money it had paid to or on behalf of Irene Desautel. (Defendant's Ex. A.) Absent an actual payment to an insurer, the Defendants argued, the exclusion contained in Section 27-34-5(8)(ii)(C) is inapplicable. In response to the Fund's argument regarding the nonduplication of recovery in Section 27-34-12(a), the Defendants argued that the claims Desautel made against United and Casco are not "covered claims" as defined by Section 27-34-5(8), and that, therefore, they are ineligible for offset under Section 27-34-12(a). Alternatively, the Defendants claimed that, even if the Court were to be persuaded by the Fund's legal argument, the case was unripe for summary judgment because the factual issue regarding the adequacy of Desautel's recovery remained in dispute.
After considering the parties' arguments, the Court issued its Decision. It found that United, by signing the Stipulation, had waived its right of subrogation, therefore barring it from ever collecting any of the proceeds paid to Desautel. Decision at 5. The Court concluded that this waiver meant that no payments made to Desautel would ever be "due" United. Id. As a result, the Court found Section 27-34-5(8)(ii)(C) inapplicable and *Page 4 
the Fund's argument unavailing vis-à-vis United. Furthermore, the Court determined that the Fund's argument regarding Section 27-34-12(a), as well as its Section 27-34-5(8)(ii)(C) argument as related to Casco, was unripe for summary judgment. A proper analysis of these arguments, the Court found, was impossible without a factual determination as to whether or not Desautel had been adequately compensated by the settlement. Until the Fund could prove that Desautel has been overcompensated in this matter, the Court held, there was a genuine issue of material fact to be determined at trial. Thus, the Court denied both motions for summary judgment.
The Fund then filed the instant motion, arguing that the Decision was based upon several errors of law and should be reconsidered. The Fund argues the Court erred in determining that the adequacy of Desautel's recovery still remained in dispute. Because Desautel settled her claims against the Defendants and Grimm in full when she entered the settlement agreement, the Fund argues that she has been fully compensated and the current litigation will not affect her recovery. Furthermore, the Fund maintains that the Court misinterpreted the Act when it determined that United had the legal authority to waive its right of subrogation.
The Defendants object to the Motion for Reconsideration, arguing that the Court had adequately considered all of the Fund's arguments at the original hearing and reached the correct legal conclusions in the Decision it issued in November. The Defendants rely on their previous argument that the Stipulation acted as waiver of United's right to reimbursement, removing it from the scope of Section 27-34-5(8)(ii)(C). Additionally, the Defendants continue to argue that the issue of adequate recovery is in dispute, and that the Fund bears the burden of proving that Desautel has been fully compensated *Page 5 
before it is entitled to summary judgment.
 Standard of Review
The Rhode Island Rules of Civil Procedure, like the Federal Rules of Civil Procedure, generally do not recognize or provide for a motion for reconsideration. See generally Hatfield v. Bd. Of Cty. Comm'rs forConverse Cty., 52 F.3d 858 (10th Cir. 1995) (citations omitted). However, the Rhode Island Supreme Court, in noting its governance of the "liberal rules" of civil procedure, has "looked to substance, not labels." Sarni v. Melocarro, 113 R.I. 630, 636, 324 A.2d 648, 651-52
(1974). Consequently, "[a] motion can be construed as made under Rule 60(b) even if it is styled as a `Motion to Reconsider.'" James Wm. Moore et. al., Moore's Federal Practice 1997 Rules Pamphlet P60.2 [9] (1996). However, a motion to vacate filed within ten days of the judgment should be treated as filed under Rule 59(e), rather than under Rule 60.Armand Eng'g, Inc. v. Town and Country Club, Inc., 113 R.I. 515,324 A.2d 334 (1974). Therefore, the Plaintiff's motion can be construed as a motion to vacate under Rule 59(e).[4]
The Rhode Island Supreme Court has addressed the issue of this Court's power to reconsider decisions rendered after a nonjury trial in a civil matter. Corrado v. Providence Redevelopment Agency, 110 R.I. 549, 555,294 A.2d 387, 390 (1972). In Corrado, our Supreme Court held that the trial court "could review its own decision and *Page 6 
grant a new trial only if it found a manifest error of law in the judgment entered or if there was newly discovered evidence which was unavailable at the original trial and sufficiently important to warrant a new trial." Id. at 554-55. The Court defined a manifest error of law as, "one that is apparent, blatant, conspicuous, clearly evident, and easily discernible from a reading of the judgment document itself."American Federation of Teachers Local 2012 v. Rhode Island Board ofRegents for Education, 477 A.2d 104, 106 (1984).
"Summary judgment is a proceeding in which the proponent must demonstrate by affidavits, depositions, pleadings and other documentary matter . . . that he or she is entitled to judgment as a matter of law and that there are no genuine issues of material fact." Palmisciano v.Burrillville Racing Association, 603 A.2d 317, 320 (R.I. 1992) (citingSteinberg v. State, 427 A.2d 338 (R.I. 1981); Ludwig v. Kowal,419 A.2d 297 (R.I. 1980)). During a summary judgment proceeding "the court does not pass upon the weight or credibility of the evidence but must consider the affidavits and other pleadings in a light most favorable to the party opposing the motion." Id. (citing Lennon v. MacGregor,423 A.2d 820 (R.I. 1980)).
"The party moving for summary judgment has the initial burden of showing that there is no genuine issue of material fact." Santiago v.First Student, Inc., 839 A.2d 550, 552 (R.I. 2004) (citing Heflin v.Koszela, 774 A.2d 25, 29 (R.I. 2001)). The moving party can meet this burden by "`submitting evidentiary materials, such as interrogatory answers, deposition testimony, admissions, or other specific documents, and/or pointing to the absence of such items in the evidence adduced by the parties.'" Id. (quoting Doe v. Gelineau, 732 A.2d 43, 48 (R.I. 1999)). "[T]he opposing parties will not be allowed to *Page 7 
rely upon mere allegations or denials in their pleadings. Rather, by affidavits or otherwise they have an affirmative duty to set forth specific facts showing that there is a genuine issue of material fact."Bourg v. Bristol Boat Co., 705 A.2d 969, 971 (R.I. 1998) (citingSt. Paul Fire Marine Insurance Co. v. Russo Brothers, Inc.,641 A.2d 1297, 1299 (R.I. 1994); Super. R. Civ. P. 56(e)).
 Analysis
The Fund was created to provide a framework for the payment of "covered claims" made against insolvent insurers in order "to avoid excessive delay in payment and to avoid financial loss to claimants or policyholders because of the insolvency of an insurer, and to create an entity to assess the cost of the protection and distribute it equitably among member insurers." Section 27-34-2. To cover the Fund's obligations, liability insurance carriers doing business in Rhode Island contribute resources to specialized accounts. Section 27-34-8(3). The insurers then cover the cost of supporting the Fund by levying higher premiums on their policyholders. Section 27-34-15.
Pursuant to the Act, the Fund assumes the obligations of an insolvent insurer as if the insurer had not become insolvent. Section27-34-8(a)(2). Section 27-34-8(a)(4) of the Act directs the Fund to "investigate claims brought against the fund and adjust, compromise, settle, and pay covered claims to the extent of the fund's obligation," which is statutorily capped at $300,000 per claimant for a covered claim. Section 27-34-8(a)(1)(iii). In carrying out its obligations, the Fund must "act in good faith regarding claims brought against policyholders." Rhode Island Insurers' Insolvency Fund v. Benoit,723 A.2d 303, 306 (R.I. 1999).
At the outset, the Fund argues that the Court erred in determining that this case was *Page 8 
unripe for summary judgment. The Court had analogized the instant case to Benoit, where the plaintiffs in a wrongful death action sought additional compensation from the Fund (which was standing in the shoes of the defendant's now-insolvent insurer) after they had received $50,000 from their own insurance company under a uninsured/underinsured motorist policy. In that case, the Fund argued that under the nonduplication provision in Section 27-34-12(a), it was entitled to an offset for the $50,000 contributed by the other insurer. The Rhode Island Supreme Court disagreed, holding that "the [F]und may not offset the amount due from an insolvent insurer in the event a claimant has not received full compensation for damages." Id. at 308. Applying this holding to the instant case, the Court found that there was no evidence to indicate whether Desautel had been fully compensated by her settlement: "This Court requires a complete examination of Desautel's recovery amount. If this Court were to determine that the settlement amount represents full compensation to Desautel, an offset would be appropriate." Decision at 8. The Fund argues that this conclusion was founded upon a legal error. It would be unnecessary to hold a hearing to determine the amount of damages, the Fund reasoned, because that answer can be found in the terms of the settlement agreement.
Upon reconsideration, the Court agrees, finding that the settlement amount fully compensates Desautel for purposes of this litigation. The role that settlement agreements play in the judicial system is an important one: by settling claims out of court, plaintiffs often forgo a full recovery in order to avoid time-consuming litigation and hefty attorneys' fees. The Court's policy "is always to encourage settlement. Voluntary settlement of disputes has long been favored by the courts."Calise v. Hidden Valley *Page 9 Condo. Ass'n, 773 A.2d 834 (R.I. 2001) (quoting Homar, Inc. v. NorthFarm Associates, 445 A.2d 288, 290 (R.I. 1982)). To encourage settlements, the Court recognizes the finality of such agreements: "The settlement of a disputed liability is as conclusive of the parties' rights as is a judgment that terminated litigation between them."Id. Here, the parties have all agreed on the actual dollar amount to be considered adequate compensation; thus, the actual amount of damages is irrelevant to the present inquiry. Furthermore, second-guessing the compromises reached by the parties, absent an indication of wrongdoing, would undermine the finality of settlement agreements. Thus, the Court, upon reconsideration, finds that the denial of summary judgment on these grounds was based on an error of law sufficiently manifest to warrant amendment under Rule 59. Accordingly, the Court will now determine this case as a matter of law, reconsidering the parties' original arguments for summary judgment.
In moving for summary judgment, the Fund argues that under Section27-34-12(a), it is entitled to an offset for the $100,000 paid by Casco[5] under Desautel's uninsured motorist's policy. The Defendants deny that this payment was made under a "covered claim" as defined by Section 27-34-5(8), and argue that, therefore, it is ineligible for set off. Both parties have relied on Benoit to support their respective arguments.
In Benoit, the claimant died in a two-vehicle accident.[6] The claimant had been a passenger in a car that collided with another vehicle, driven by the defendant. At the time of the accident, the defendant had a liability insurance policy with a limit of $25,000. However, before the claimant could collect on that policy, the defendant's insurer was *Page 10 
declared insolvent. Thus, the claimant collected uninsured motorist benefits of $50,000 from her own automobile insurer, and then made a demand against the Fund for the $25,000 under the defendant's insolvent policy. The Fund refused to pay, arguing that under Section 27-34-12(a), it was entitled to an offset for the $50,000 contributed by the claimant's insurer.
The Rhode Island Supreme Court began its interpretation of Section27-34-12(a) by noting that it was "`neither a model of clarity nor an exemplar of the draftsman's craft.'" Benoit, 723 A.2d at 307 (quotingArizona Property and Casualty Insurance Guaranty Fund v. Herder, 156 Ariz. 203, 751 P.2d 519, 523 (Ariz. 1988)). The language in dispute reads as follows:
 "Any person having a claim against an insurer under any provision in an insurance policy other than a policy of an insolvent insurer which is also a covered claim, shall be required to exhaust first his or her right under that policy. Any amount payable on a covered claim under this chapter shall be reduced by the amount of any recovery under the insurance policy." Section 27-34-12(a).
While the Fund sought to offset the amount contributed by the plaintiffs' insurer, the Supreme Court was hesitant to read Section27-34-12(a) so broadly. After recognizing that the "language is ambiguous if not contradictory," id. (quoting International CollectionService v. Vermont Property Casualty Guaranty Association,150 Vt. 630, 555 A.2d 978, 980 (Vt. 1988), the Court determined the purpose of the section to be the "prevention of double recovery." Id. Guided by this principle, it then found that the structure and language of the Section mandated that only "covered claims" could be offset by the Fund: *Page 11 
 "Like the Sands court, we read the phrase `any recovery under the insurance policy' in the second sentence of § 27-43-12(a) to refer to the recovery made pursuant to the first sentence, which deals with exhaustion. . . . The second sentence of § 27-34-12(a) clearly references the first, and the first sentence refers only to covered claims. Therefore, it is impossible to conclude that the second sentence allowing offset contemplated the offset of a noncovered claim. Therefore, under 27-34-12(a), the fund may only offset a covered claim." Id.
Thus, the Supreme Court concluded, the essential question was whether the $50,000 uninsured motorist claim that the plaintiffs made against their own automobile insurer qualified as a "covered claim." The Court found that it did not.
In making this determination, the Supreme Court interpreted the language of Section 27-34-5(8)[7] to mean that a claim can be considered a "covered claim" only if it "results from the insolvency of an insurer." Id. The claimant's claim, the Court found, did not meet that definition: "Here, [the plaintiffs'] uninsured motorist claim was made against [their automobile insurer], a solvent, not insolvent, insurer." Id. It then sums up its conclusion even more directly:
 "Because [plaintiffs' insurer] is not an insolvent insurer, and because the $50,000 recovery was clearly not `within the coverage and subject to the applicable limits' of the [defendant's policy under the insolvent insurer], the [plaintiffs'] claim under their [own automobile policy] was not a covered claim and thus did not fall within the purview of Section 27-4-12(a). Because the $50,000 claim made against [the plaintiffs' automobile insurer] is not a covered claim as defined by the act, the fund has no support for its *Page 12 
position that it may offset the amount it owed on [the defendant's policy with the insolvent insurer] by the [plaintiffs'] recovery from [their own automobile insurer]." Id. at 308.
This language clearly indicates that the offset was denied because the plaintiffs' insurer "[was] not an insolvent insurer." Id. Here, Casco is also not an insolvent insurer, and therefore, under the clear language of Benoit, the Fund cannot offset its obligation by any payment Desautel collected under her uninsured motorist policy.
This interpretation of Benoit withstands the Fund's attempt to distinguish these two cases. The Fund argues that in Benoit, unlike in the instant case, it was unclear whether the uninsured motorists claim had been made as a result of the defendant's insurer's insolvency or the lack of insurance on the other car involved in the collision. The Supreme Court, before denying the offset, recognized this ambiguity, noting that the record was silent as to whether "[the plaintiffs] collected their uninsured motorist's coverage as an alternate source of insurance for their claims against Benoit." Id. at 307. The Fund seized upon this language to support the inverse conclusion — that, had there been clear evidence in Benoit that the $50,000 had been collected as a substitute for the defendant's insolvent insurance policy, the offset would have been allowed. The Fund argues that in this case, as Reliance's insolvency is the only possible trigger of Desautel's uninsured motorist policy, there is clear evidence here that Desautel's claim was the result of Reliance's insolvency. Therefore, the Fund concludes, an offset should be allowed in this case.
The Court, while acknowledging the existence of this ambiguity inBenoit, cannot follow this argument all the way to the Fund's conclusion. The Fund's analysis of this language would be colorable if it were to be examined in a vacuum; however, when read *Page 13 
in conjunction with the other passages from the opinion cited above, this interpretation fails. The Supreme Court's unambiguous discussion of the solvency/insolvency distinction indicates that even if the claimants in Benoit made their claim as a result of the defendant's insurer's insolvency (and not as the result of the other uninsured vehicle) the offset is not allowed because the plaintiff's insurance company was solvent, provided however, that it does not provide for double recovery for the claimant. Id. at 308.
The Supreme Court addresses this last point in order to comport its decision with the purpose of the Act. If the claimant inBenoit prevails in her wrongful death action, the Supreme Court notes, she will be entitled to collect a statutory minimum of $100,000, and then the $50,000 she had received from her own insurer would not provide adequate compensation. See Section 10-7-2. Therefore, the Court concluded, the Fund, covering the obligations of the insolvent insurer, will be responsible for paying the claimant $25,000, the maximum allowed under the defendant's policy under the insolvent insurer. The defendant will then be liable for the rest of the judgment. Benoit,723 A.2d at 308. Succinctly put, the Supreme Court stated its rationale as follows:
 In our opinion, the fund may not offset the amount due from an insolvent insurer in the event a claimant has not received full compensation for damages. . . . By so holding, we achieve a result that conforms with the `intent of the section to prevent a duplication of recoveries, and comports with the act's purpose to leave a claimant in the same position as if there had been no insolvency.' Id. (citing Int'l Collection Service, 555 A.2d at 980.)
This rationale comports with the decision reached by the Court today. Overcompensation is not an issue in the present case. At oral argument, counsel for the Fund repeatedly stressed that Desautel has been fully compensated by the $1.38 million she has received. In neither the written memoranda accompanying the Fund's motion for reconsideration *Page 14 
nor the arguments of counsel at hearing[8] does the Fund allege that Desautel should return any of the money she has already received.[9]
Thus, all parties agree that the $1.38 million received by Desautel represents adequate, and not duplicative, compensation; in fact, had she not received the additional $300,000, she would have been consideredundercompensated.
The Fund argues that it is not trying to undercompensate Desautel — she will keep the $1.38 million, but it is the Defendants, not the Fund, who should be responsible for the $300,000. Here, too, the Fund's argument runs contrary to the plain language of the Act and the holding in Benoit. The Legislature has stated that the purpose of the Act is to "avoid financial loss to claimants or policyholders because of the insolvency of an insurer." Section 27-34-2. (Emphasis added.) "It is well settled that when the language of a statute is clear and unambiguous, this Court must interpret the statute literally and must give the words of the statute their plain and ordinary meanings."Tanner v. Town Council, 880 A.2d 784, 796 (R.I. 2005) (citations omitted). "Moreover, when we examine an unambiguous statute, `there is no room for statutory construction and we must apply the statute as written.'" Id. By including the term "policyholders" in Section 27-34-2, the Legislature made it clear that a significant purpose of the Act is to protect *Page 15 
the policyholders who had the foresight to shield themselves from liability by purchasing insurance policies.
Certainly, there are situations where the "claimant" and the "policyholder" are one and the same, but if the Legislature intended to protect only the policyholders who were also claimants, the disjunctive phrase "or policyholders" becomes superfluous. The Court's interpretation of a statute is guided by its desire to give effect to the intent of the Legislature, and therefore, it is to be presumed that each word, sentence, and provision of a statute is significant.Ret. Bd. Of the Emples. Ret. Sys. Of R.I. v. DiPrete, 845 A.2d 270, 279
(R.I. 2004) (citing Champlin's Realty Assocs., L.P. v. Tillson,823 A.2d 1162, 1165 (R.I. 2003). Furthermore, the Rhode Island Supreme Court has made the dual purpose of the Act perfectly clear: "Under the act, the fund inherits the obligations of the insolvent insurer and thus must protect insureds when an insolvent company is unable to do so."Benoit, 723 A.2d at 309. Other jurisdictions have similarly found that the dual purpose of an insurance insolvency fund is to protect both claimants and the insureds. See, e.g., California Ins. Guar. Ass'n v.Liemsakul, 193 Cal. App. 3d 433, 441-42 (Cal.Ct.App. 1987) ("The [California Insurance Guaranty Association] scheme was enacted to protect the insured public, which includes the insureds of insolvent insurers, as well as third-party claimants."); Prios, 863 P.2d at 1365 ("The policy of protecting the insureds of insolvent insurers, as well as third party claimants, is equally applicable to the Washington statute.").
Upon reconsideration, the Court recognizes that it erred in denying the Defendants motion for summary judgment. Although it was the Fund that argued that this case could be determined as a matter of law, the law in fact favors the Defendants on this issue. *Page 16 
Before concluding its analysis, however, the Court must address the Fund's other argument, regarding the exclusion provision in Section27-34-5(8)(ii)(C).
The Fund argues that it should receive a setoff for the money contributed by United because United had a lien on any payments made to Desautel. Section 27-34-5(8)(ii)(C) states that a "`[c]overed claim' shall not include any amount . . . [d]ue any reinsurer, insurer, insurance pool, or underwriting association, as subrogation recoveries or otherwise. . . ." Thus, the Act expressly forbids the Fund from covering any claim that would be due an insurer, including for purposes of subrogation. See McGuirl v. Anjou Int'l Co., 713 A.2d 194, 197-8
(R.I. 1998). In the original Decision, the Court dismissed the Fund's arguments on this point, finding that the Stipulation signed by United prevented it from ever recouping any of the money it had paid to Desautel, therefore removing her claim from the purview of this exception. See Decision at 5.
The Fund asks the Court to reconsider this holding. In support, the Fund cites a multitude of cases wherein an insurer could not waive or assign its right of subrogation in order to place the loss on the Fund or to provide for double compensation for the plaintiff. See Ferrari v.Toto, 417 N.E.2d 427, 429 n. 2 (Mass. 1981); Kinney v. Leaman,436 N.E.2d 996 (Mass.App. 1982); Ventulett v. Maine Ins. Guar. Ass'n,583 A.2d 1022, 1024 (Me. 1990); Besack v. Rouselle Corp., 706 F. Supp. 385, 387
(E.D. Pa. 1989); Proios v. Bokeir, 863 P.2d 1363, 1368-69 (Wash.App. 1993). These cases, however, are not directly on point. In several, the Fund was not obligated to pay a claimant because another insurance company has already fully compensated him or her. See Ferrari,417 N.E.2d at 429 ("There is no reason why [the plaintiff] should have any greater rights because [the defendant's insurer] became insolvent[.]");Ventulett, 583 A.2d at 1024 *Page 17 
(There is no reason why [the plaintiff] should have any greater rights because [the defendant's insurer] became insolvent or because [the Act creating the insolvency fund] was enacted."); Besack,706 F. Supp. at 387 ("If he were able to do so, [the plaintiff] would be able to recover more money than he could have if [the defendant's insurer] had remained solvent. . . . [S]uch a double recovery would exceed the loss-prevention purposes of the Act."); Proios, 863 P.2d at 1367 ("We believe that the correct approach is to allow the offsets if they are consistent with the policy behind the act, which is to avoid financial loss to the public, and the policy behind the nonduplication provision, which is to prevent double recoveries.").
Additionally, several of these cases hold that, as between another, solvent insurer and the Fund, the solvent insurer is to absorb the loss created by the insolvency of a fellow insurer, and no amount of "agreements" between insurance companies and plaintiffs can alter that statutorily-prescribed allocation. See Ferrari, 417 N.E.2d at 420 n. 2 ("Such an agreement should not be permitted to alter the legislative judgment that the loss should not be placed on the Fund.");Ventulett, 583 A.2d at 1024 ("[A]s between [a] workmen's compensation insurer and the Fund, the loss must be absorbed by the workmen's compensation insurer.").
These holdings are in accordance with the Court's decision today. The Fund is not asked to bear the loss in lieu of United; rather, it is absorbing a loss that would otherwise fall to the defendants, the policyholders — a result effectuating the purpose of the Act. Furthermore, as discussed above, all parties do not dispute that the $1.38 million settlement adequately compensates Desautel for her injuries, and she has not been overcompensated by the $300,000 contributed by the Fund. These cases can all be *Page 18 
harmonized when one considers the purpose behind these insolvency acts: to avoid loss to claimants and policyholders when an insurer is declared insolvent, while avoiding double recovery for claimants.
 Conclusion
Upon reconsideration, the Court determines that its Decision finding that this case was unripe for summary judgment was made in error, and that this error constitutes sufficient cause to amend the judgment pursuant to Super. R. Civ. P. 59(e). The Decision entered on November 29, 2006 is hereby amended. The Court, after reconsidering the parties' original motions for summary judgment, hereby grant the Defendants' motion for summary judgment. The Fund's motion for summary judgment must be and is denied.
Counsel shall submit an appropriate order for entry.
[1] The full text of the Decision can be found at Rhode IslandInsurers Insolvency Fund v. New Prime, No. 04-1703, 2006 R.I. Super. Lexis 157 (Nov. 29, 2006)).
[2] Healthcare Recoveries, Inc. is not an interested party in this motion.
[3] "The policyholder of an insolvent insurer comes within the definition of . . . uninsured motorist coverage." Rhode Island Insurers'Insolvency Fund v. Benoit, 723 A.2d 303, 306 (R.I. 1999); see also
Section 27-7-2.1(a) (stating in relevant part that uninsured motorist coverage applies "in the case of a responsible party whose liability insurance carrier was insolvent at the time of the accident or became insolvent subsequent thereto").
[4] Under Rule 59(e), a motion to alter or amend the judgment shall be served not later than 10 days after entry of the judgment. The judgment in this case entered on November 29, 2006. The tenth day after this entry was December 9, 2006, which fell on a Saturday. Under Rule 6(a), "In computing any period of time prescribed or allowed by these rules, by order of court or by any applicable statute, the day of the act, event, or default after which the designated period of time begins to run is not to be included. The last day of the period is to be included,unless it is a Saturday, Sunday, or a legal holiday, in which event the period runs until the end of the next day which is neither a Saturday, Sunday, nor a holiday." (Emphasis added.) Thus, the Court considers the following Monday, December 11, to be the tenth day for the purposes of this action. The Fund filed its motion on December 11; thus, it is timely under the statute.
[5] In its reply brief, the Fund apparently limited its argument under this section to the payments Desautel received from Casco; it did not claim that the payment from United resulted from the insolvency of an insurer.
[6] The claimant's parents, as co-administrators, sued on behalf of the claimant's estate, as well as in their individual capacity.
[7] Section 7-34-5(8) defines a "covered claim," in relevant part, as "an unpaid claim, including one for unearned premiums, submitted by a claimant, which arises out of and is within the coverage and subject to the applicable limits of an insurance policy to which this chapter applies issued by an insurer, if the insurer becomes an insolvent insurer on or after July 1, 1988."
[8] See The Fund's Brief in Support of its Motion for Reconsideration at 4. ("Desautel received her full settlement and the issue in this case is strictly between the Fund and [the Defendants] and whether [the Defendants are] responsible to reimburse the Fund for the $300,000 that constituted its reserved portion of the settlement.") Additionally, at oral argument, counsel for the Fund repeatedly indicated that Desautel was entitled to the full $1,380,000 she has received. ("Ms. Desautel received $380,000 from United Health care, didn't have to pay it back, so she received that benefit as part of her settlement. That wasn't part of the $900,000 she got from [the Defendants] and the Fund, that's separate and apart, a pot of money over here."; "So really, she settled for $1.4 million, or $1.38 was her total settlement."; "There is no indication in the record that she was not fully satisfied by the 1.4.").
[9] While in its original motion for summary judgment, the Fund indicated that the $900,000 payment to Desautel included the payments from United, the brief accompanying the Fund's Motion for Reconsideration and counsel's argument at hearing indicate that the Fund has abandoned this interpretation of the settlement. *Page 1